**WATSON et al. v. FIRST NAT. BANK OF COLEMAN. (No. 620–4402.)**

(Commission of Appeals of Texas, Section B. June 16, 1926.)

**Limitation of actions 145(1)—As between the parties, renewal contract of note and deed of trust securing it held effectual to extend lien and time for enforcing it, though not acknowledged and recorded (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5693–5695, 6824 [Rev. St. 1925, arts. 5520–5523, 6627]).**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 5693–5695 (Rev. St. 1925, arts. 5520–5523), in view of article 6824 (article 6627), making acknowledgment and recording of instruments affecting real estate necessary only as to subsequent purchasers without notice, where note secured by acknowledged and recorded deed of trust is, with the lien securing it, before it is barred, renewed by contract of the parties, the renewal contract is not ineffectual to extend the lien and time for enforcing it, as between the parties, because not acknowledged and recorded.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the First National Bank of Coleman against J. W. Watson, Sr., and others. On appeal of plaintiff, decree denying fore-closure of deed of trust was reversed by the Court of Civil Appeals (271 S. W. 438), and defendants bring error. Affirmed.

Critz & Woodward, of Coleman, for plaintiffs in error.

Snodgrass, Dibrell & Snodgrass, of Coleman, for defendant in error.

POWELL, P. J. The nature of this case is fully stated by the Court of Civil Appeals. See 271 S. W. 438. Briefly, the Watsons executed a note for $5,170.50, payable to the bank. It was secured by a deed of trust, duly acknowledged and recorded, on 82 acres of land. The note was renewed before it was barred, and the renewal note expressly provided that it was in renewal of the balance due on the original debt, identifying the same, and the deed of trust securing the same. But this renewal note and deed of trust was not acknowledged and placed of record. The bank sued upon the renewal note for its debt, and also for a foreclosure of its lien. The district court and Court of Civil Appeals agreed that the judgment for the debt was correct. But they differed as to the right of the bank to enforce its lien. The Court of Civil Appeals held the lien was enforceable.

There is but one controlling question in this case—the one involved in the difference between the lower courts as just indicated. The Court of Civil Appeals has written a strong and convincing opinion, and we think correctly decided this issue. In a large measure, we desire to refer to Justice Blair's opinion for our reasons for agreeing with his own conclusion. And we know of no stronger language in this connection than that which he quotes from Chief Justice Pleasants in the case of Amonette v. Taylor, 244 S. W. 238, as follows:

"The majority of this court cannot agree with the appellants in the contention that article 5695 of the statute is applicable to renewals of liens as between the parties. There is nothing in the caption of the original act, nor in its language as now embraced in the cited articles of the statute, which would require the construction that it was the intention of the Legislature in the enactment of the law to declare void as between the parties any renewal of a lien on land which is not recorded in accordance with the provisions of the act. No public benefit could be subserved by such a law. If parties can create a valid lien on land without putting it of record, no possible reason suggests itself to our minds for denying them the right to extend or renew a lien in the same way. We think the obvious purpose and intent of the statute was to protect subsequent purchasers of the land from unrecorded renewals or extension of liens, and not to unnecessarily hinder parties in their right to make contracts."

The writ of error was granted in the instant case "on conflicts alleged." And we think the Courts of Civil Appeals are in con-

flict. Justice Blair says these conflicts are merely obiter dicta. We are inclined to think he is correct in this view, because the exact situation in the instant case was not before the courts in the cases he reviews. But Chief Justice Pleasants seems to recognize that his views, with which Judge Blair agrees, are in conflict with certain cases the former mentions. And, whether they are so in conflict upon questions necessarily before the court, the decisions are directly in conflict in their expressions. We would say that the leading cases upholding Justice Blair's views are those of his own court and the court at Galveston. On the other hand, the leading cases to the contrary, in their expressions, are those of Adams v. Harris (Tex. Civ. App.) 190 S. W. 245, and McCracken v. Sullivan (Tex. Civ. App.) 221 S. W. 336. The former is by the court at Texarkana, and the latter by the court at San Antonio. As shown by Justice Blair, the Harris Case, as well as that of Hoya v. Self (Tex. Com. App.) 245 S. W. 425, involved a debt of date prior to 1905, and therefore was governed by the last paragraph of article 5695. Such debts, already barred, could be brought back in only two ways, neither of which was exercised by the payees in the notes.

There is no opinion written by the Supreme Court itself involving the question before us. We think that court is free to follow those Courts of Civil Appeals which have adopted the correct construction of the statutes involved. The statutes which we think should be considered together in determining this question, and which were in effect when this cause of action arose, read as follows:

"Art. 5693. *Time in Which Power of Sale may be Exercised.*—No power of sale conferred by any deed of trust or any mortgage on real estate heretofore executed, or that may hereafter be executed shall be enforced after the expiration of four years from the maturity of the indebtedness secured thereby, and any sale under such power after the expiration of such time shall be void, and such sale may be enjoined and the lien created in such mortgages or deeds of trust shall cease to exist four years after the maturity of the debt secured thereby. Provided, if several obligations are secured by said mortgage or deed of trust, the same may be enforced at any time prior to four years after the note or obligation last maturing has matured and may be enforced as to all notes or obligations not then barred by the four year statute of limitations."

Article 5694 relates to vendor's lien notes and the retention of the superior title, and is not involved in the case at bar.

"Art. 5695. *Contracts of Extension, How Made and Construed; Proviso.*—When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded. The date of maturity set forth in the deed of conveyance or deed of trust or mortgage or the recorded renewal and extension of the same shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned. Provided that the owners of all notes secured by deeds of trust or other liens and the owners of all vendor's lien notes reserved in deeds of conveyance which were executed prior to July 14, 1905, and which are more than four years past due at the time this act takes effect as shown by the original mortgage, deed of trust or conveyance, or last record extension shall have twelve months after this Act takes effect within which they may obtain such record extension as hereinbefore provided for, or bring suit to enforce the lien securing them if same are valid obligations when this Act takes effect and if such debt is not so extended of record, or suit is not brought within such time, the right to extend such debt of record, or bring suit to enforce such liens shall be forever barred; and provided that the owners of all notes secured by deeds of trust or other liens and the owners of all vendor's lien notes reserved in deeds of conveyance which were executed subsequent to July 14, 1905, shall have four years after this act takes effect within which they may obtain such recorded extension as herein provided for, or bring suit to enforce the liens securing them if same are valid obligations and not already barred by the four years statutes of limitation when this act takes effect, and if such debt is not extended of record, or suit is not brought within such four years or four years after they mature, they shall be forever barred from the right to extend such debt of record, or bring suit to enforce the lien securing the same, and further provided if any such obligations executed subsequent to July 14, 1905, were barred by the four years statute of limitation on the 30th of June, 1913, the owners thereof shall have four years within which to bring suit to enforce the lien securing the same; and providing those owning the superior title to land retained in any deed of conveyance or his transferee and those subsequently acquiring such superior title by transfer, shall have twelve months after this act takes effect within which to bring suit for the land if their claim to the land is not otherwise invalid and unless such suit is brought within twelve months after this act takes effect, they shall be forever barred from bringing suit to recover the same. Acts 1905, p. 334, § 3. Acts 1913, S. S. p. 39, § 1, amending article 5695, Rev. St. 1911, as amended by Acts 1913, p. 250, § 3."

"Art. 6824. *All Sales, etc., to be Void as to Creditors and Purchasers, Unless Registered.*— All bargains, sales and other conveyances whatever, of any land, tenements and hereditaments, whether they may be made for passing any estate of freehold of inheritance or for a term of years; and deeds of settlement upon marriage, whether land, money or other personal thing; and all deeds of trust and mortgages shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk, to be recorded as re-

quired by law; but the same as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof or without valuable consideration, shall nevertheless be valid and binding. Act Feb. 5, 1840, p. 69, § 4, P. D. 4988."

The last article, unchanged, has been carried forward as article 6627 of the Revised Civil Statutes of 1925. This same new Code makes no changes in the other articles we have quoted which shed any light upon the question now before us. The new articles are 5520–5523, inclusive.

Prior to 1905, a vendor's lien and superior title were never barred. And notes secured by a deed of trust upon land could be renewed by action of the parties and such renewals impliedly, under the decisions of our Supreme Court, renewed the lien itself. The consequence was that the deed and real estate mortgage records were filled with various liens, and the only way one desiring to deal with land could be sure of the status of the title was to interview the parties mentioned in the instruments of record. Frequently, liens were paid and never released of record. It became important, therefore, so far as third parties dealing with the lands were concerned, to provide that liens, barred of record, should be barred in fact also. And it was also decided that notes carrying a lien on realty should be barred as between the parties themselves in four years after maturity just as other notes, unless the makers thereof renewed the same. This character of legislation began in 1905, when vendor's lien notes were barred, under the act of that year, in ten years. In 1913 the present statutes were enacted, barring notes of all kinds in four years, unless renewed.

In the case at bar, not only was the debt renewed, but the parties renewed the lien securing the same. We come, then, to the one controlling question in this case, and that is whether or not the Legislature intended to render the lien barred, as between the parties to the same, just because the extension thereof was not acknowledged and recorded. These articles, passed in 1913, are, in a large sense, statutes of limitation. But they are more than that. In one sense, they establish rules of evidence. In another, they are registration statutes. In so far as they require the recording of a renewal, after proper authentication, they are unquestionably registration statutes. That being true, in order to determine the intention of the Legislature upon the point here in controversy, it is necessary to consider other registration statutes. Now article 6824, supra, is a direct expression of legislative policy of this state upon the effect of acknowledging and recording instruments affecting real estate. That article includes any and every kind of instrument affecting real property. It provides that the recording is necessary when third parties are to be considered. But it expressly provides

the contrary rule to be true when the instruments are being construed as between the parties themselves. This article has been the law since 1840, when Texas was a republic. It was re-enacted in 1925, along with the other acts under consideration. Can it be said that the Legislature intended to have one rule apply to an original deed of trust and exactly the opposite theory govern a renewal thereof? We think not. What would be the reason for such a difference? No judge has ever assigned such a reason. We think none can. If our Legislature says that parties do not need the protection of an acknowledgment and recording when they make the original instruments, upon what possible basis could it be said that these same lawmakers thought the parties needed any such protection in renewing such instruments? Since the rule provided in article 6824 is applicable to all instruments affecting real estate, then it must be assumed that the Legislature, in the articles affecting renewals, would have provided that they should be an exception to said article 6824, if it had so intended. Since the statutes relate to the same general subject, the larger must include the smaller. A statute relating to all instruments must include the one referring only to one kind of instrument, unless the contrary intention is expressed.

In none of the cases contrary to our views does the Court of Civil Appeals refer to article 6824. And in the McCracken and Adams Cases, supra, the leading ones of their kind, no application for writ of error was ever filed. The Supreme Court did not pass upon those cases at all.

On the other hand, in the case from Galveston, from which we have quoted, this very question was involved, and a writ of error was refused. In that case, the trial court was Judge J. D. Harvey. He enforced the lien. The attorneys prepared the statement of facts, but failed to secure the approval of the trial judge thereto. For that reason the Court of Civil Appeals held that it could not lawfully be considered. But they said, if they did consider it, the judgment of the trial court should be affirmed anyway. It is true that Judge Graves noted his dissent, stating that he still adhered to his views as expressed in his dissent in the case of Templeman v. Kempner (Tex. Civ. App.) 223 S. W. 293. But his dissent in that case made no impression upon the Supreme Court, and a writ of error was refused therein. In that case the interests of strangers were involved, making it stronger in this respect than the case at bar.

Justice Graves said, in the Kempner dissent, that he thought it was the object of the Legislature, at least as against third parties, "to cut off implied renewals of liens," etc. We agree with him, so far as strangers are concerned. And, even as between the parties, we are not now enforcing any merely

"implied" renewal of the lien. Justice Graves does not allude to article 6824. Suffice it to say that neither he nor any other judge has ever stated just wherein the makers of the instruments could be injured by failure to acknowledge and record the same. And, of course, none has ever been able to assign any sort of reason why such requisites should apply to a renewal of a deed of trust, when the Legislature, for nearly a century, has expressly provided that they do not apply to the original instruments themselves. Until some such reason can be given, we prefer to uphold contracts made by the parties. To say the least of it, the meaning of the statutes is doubtful. The different views expressed by the able Courts of Civil Appeals is proof positive that the Legislature has not clearly provided that a man may, in good faith, make a debt and secure its payment and then relieve himself of such obligation. Our construction does not deprive the Watsons of any benefit which would have accrued to them had the renewal been recorded. But, if we affirm the judgment of the district court, we have taken from the bank its only security for a large debt.

We think we should not turn a deaf ear to considerations of equity and right. Our ruling, in cases of doubtful construction, should always be in favor of enforcing and upholding honesty and fair dealing in the relations between men.

This equitable consideration had its effect upon the court at Texarkana in the very recent case of Mortgage Co. v. Bellamy, 265 S. W. 1070. And its opinion has just been affirmed by Section A of the Commission of Appeals (278 S. W. 180). The statute expressly provides that, when a note is not renewed within a certain time, it shall, upon a trial, be "conclusively presumed" to have been paid. In the Bellamy Case, purchase-money notes on a home were barred, and, therefore, under the statute, conclusively presumed, upon any trial, to have been paid. But, the parties themselves having renewed the notes, the higher courts reversed the trial court and enforced the lien. We think they did so correctly. In that case the Court of Civil Appeals said no intervening rights of third parties were involved. This is the same court which wrote the earlier case of Adams v. Harris, supra, relied upon by plaintiffs in error here.

The codifiers in 1925 gave statutory effect to the right of the parties themselves to renew a debt or lien, already barred. The courts had always done so. The new statute upon this subject, an addition to the original act, reads as follows:

"Provided the owner of the land and the holder of the note or notes may at any time enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lienholders or purchasers subse-

quent to the date such liens became barred of record under laws existing prior to the taking effect of, or under this act." Rev. St. 1925, art. 5522.

This is but another evidence that the purpose of this statute, so far as the recording of the renewals is concerned, is for the benefit of third parties. Again, why should a maturity date of record be conclusively presumed to be correct, regardless of the actual facts as shown by the contracts of the parties themselves, except in so far as such a presumption is fair to outsiders who are not familiar with the actual facts?

We think the Austin and Galveston Courts of Civil Appeals have correctly decided the controversy in issue here, and that any other courts expressing contrary views are in error.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.