### RUSSELL–COLEMAN OIL MILL v. JOHNSON et al.   (No. 7602.)

(Court of Civil Appeals of Texas.   San Antonio. June 18, 1926.   Rehearing Denied Oct. 6, 1926.)

**1. Limitation of actions ⬅➡143(6).**

Notwithstanding Rev. St. 1911, arts. 5693–5695, as amended by Acts 33d Leg. (1913) c. 123, §§ 1–3 (Vernon's Ann. Civ. St. 1925, arts. 5520–5523), renewal of existing debt or lien is binding on parties thereto and carries lien to due date, though extension is not put in form and recorded.

**2. Mortgages ⬅➡68—Failure to record extension of debt secured by trust deed held not to entitle junior lienholder with notice to superior lien.**

Where trust deed in favor of junior lienholder expressly recited existence of prior deed of trust which was then valid and subsisting as between parties, failure to record extension of the debt secured by such prior lien, as required by Rev. St. 1911, arts. 5693–5695, as amended by Acts 33d Leg. (1913) c. 123, §§ 1–3 (Vernon's Ann. Civ. St. 1925, arts. 5520–5523), did not entitle junior lienholder to superior lien.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Frio County; Covey C. Thomas, Judge.

In the matter of the estate of H. E. Johnson, deceased. From a decree of the district court reversing an order of the probate court holding the Russell-Coleman Oil Mill entitled to a lien on particular property superior to lien of H. L. Johnson, the Russell-Coleman Oil Mill appeals. Decree reformed and, as reformed, affirmed on rehearing.

Spencer & Rogers, of San Antonio, for appellant.

Geo. M. Clifton, of San Antonio, for appellees.

SMITH, J. On March 27, 1916, the Moore Gin Company executed a deed of trust conveying to a named trustee block 1 of the Biediger addition to the town of Moore, in Frio county, to secure the payment of a promissory note of the same date for the sum of $8,000, executed by H. E. Johnson, and payable, three years after its date, to the order of T. A. Coleman. The deed of trust was forthwith recorded.

By its terms the original note matured on March 27, 1919, on which date it was renewed to mature September 23, 1919, but no written extension was executed or recorded as then provided by Rev. St. 1911, arts. 5693–5695, as amended by the Act of 1913 (Acts 33d Leg. c. 123, p. 250, §§ 1–3 [Vernon's Ann. Civ. St. 1925, arts. 5520–5523]). Out of this omission arose the controversy in this suit. The renewal note was acquired by the Russell-Coleman Cotton Oil Company, which was later merged into the Russell-Coleman Oil Mill, appellant herein.

If the original obligation of March 27, 1916, was not preserved as against subsequent purchasers or mortgagees by the unrecorded renewal note of March 27, 1919, it became barred by limitation on March 27, 1923.

On January 11, 1923, H. E. Johnson, the maker of the original and renewal notes above described, executed and delivered his promissory note for $26,500, payable to H. L. Johnson one year after its date. To secure this note H. E. Johnson, the maker, and his wife, executed and delivered a deed of trust upon the property previously conveyed to secure the Coleman note. This deed of trust was forthwith recorded, but as the Coleman deed of trust was of record and still in force by its own terms, the lien created by the Johnson deed of trust was junior to the prior and superior Coleman lien. The Johnson deed of trust (the later one) embraced in its granting clause a recital that there was "outstanding against said * * * property a deed of trust in favor of Russell-Coleman Cotton Oil Company to secure a note for $8,000." As the Russell-Coleman Cotton Oil Company or its successor, the Russell-Coleman Oil Mill, never owned the original note executed by H. E.

Johnson to Coleman, but did at the time own the renewal thereof, the acknowledgment by H. L. Johnson of the existence of the outstanding debt in favor of the Cotton Oil Company must be construed to have reference to the renewal note executed by H. E. Johnson to Coleman on March 27, 1919, to mature on September 23, 1919. At this juncture the question arises, Did this acknowledgment by the holder of the junior lien, and the implied notice arising therefrom, of the existence of the renewal of the original obligation so as to postpone its maturity until September 23, 1919, preserve the status of the parties for the same purposes and to the same extent as if the debt and lien had been extended of record in the manner and within the time provided by article 5695? If so, appellant's lien is still superior to that of appellee; if not, the relative dignity of the two liens is reversed.'

On July 27, 1923, after the execution of the note to appellee on January 11, 1923, and the execution and registration of the deed of trust to secure said note, and after the original Coleman note would have been barred in the ordinary course, but before the renewal thereof (to mature September 23, 1919) would have been barred, the Moore Gin Company and H. E. Johnson executed and delivered their four promissory notes, each for the sum of $2,000, payable one, two, three, and four years after date, respectively, to the order of Russell-Coleman Oil Mill, and on an unnamed but presumably the same date H. E. Johnson executed a deed of trust upon the property in controversy to secure the payment of the notes. This deed of trust was recorded on July 31, 1923, and embraced this recitation:

"Said property is free from all liens, claims and incumbrances of any and every kind and character, except an indebtedness of $8,000 and interest thereon, dated March 27, 1916, due on or before three years after date, executed by the Moore Gin Company and H. E. Johnson individually in favor of T. A. Coleman, and secured by a deed of trust of even date herewith, on the property hereinbefore described and herein conveyed; the payment of which said note was extended so as to mature on September 23, 1919. Said note has been transferred to and is now owned by the beneficiary herein and is taken up and embraced in the notes this day given and by this deed of trust secured, the purpose of this instrument being simply to take up, carry forward, and extend the time of payment of said note, and the lien securing the same shall not in any manner be waived, but is and shall remain in full force and effect, a valid and subsisting lien on the property hereinbefore described and herein conveyed, and the beneficiary herein is subrogated to all the rights of the said T. A. Coleman, by virtue of the said T. A. Coleman having been the legal owner and holder of said note and the lien securing the same, and except a deed of trust given to H. L. Johnson, which deed of trust is of record in Frio county, Texas, and which recognizes the lien herein as a first and superior lien to the said lien given in said deed of trust."

This controversy arose in probate proceedings in the county court, wherein the probate court entered a decree establishing the debts of both parties, and the superiority of the oil mill's lien over H. L. Johnson's lien. On appeal by Johnson the district court reversed the order of the probate court and held that Johnson's lien was superior to that of the oil mill, which has brought the controversy here by appeal.

[1] It seems to be settled by the decisions in this state that, notwithstanding the provisions of articles 5693–5695, the renewal of an existing debt or lien is binding upon the parties thereto and has the effect of extending the debt to its due date and of carrying the lien with it, even though the extension is not put in the form and recorded in the manner provided in those statutes. First National Bank v. Watson (Tex. Civ. App.) 271 S. W. 438, affirmed on June 16, 1926, by the Supreme Court, 285 S. W. 1050; Amonette v. Taylor (Tex. Civ. App.) 244 S. W. 238 (writ of error denied).

[2] It but remains to be determined, then, whether or not an unrecorded renewal and extension of the debt and lien, valid as between the parties thereto, is equally binding upon a junior lienholder who took his lien with knowledge of and expressly subject to the prior lien at a time when that lien was still in force apparent upon the records. Appellee took his junior lien and accepted a deed of trust creating that lien at a time when appellant's original lien and debt were still in effect by force of the public records. Appellee contracted with the debtor and mortgagor with specific reference to the existing and prior lien, in which contract it was recited that there was then "outstanding against the property conveyed a deed of trust in favor of Russell-Coleman Cotton Oil Company to secure a note for $8,000." In other words, appellee took his lien subject to the existing lien, knowing that it was valid and prior to his own, and that it could be continued indefinitely in binding force as superior to his junior lien, by contract between the debtor and the holder of the prior debt and lien. He contracted for his lien in contemplation of the power of the debtor and original creditor to extend the prior debt and lien and thus keep his in the junior position. He could not complain, could not be misled, could not be placed in a worse position, if they chose to exercise the power. By contracting for his junior lien with this knowledge, and by accepting his junior lien subject to the prior and existing lien, appellee may be said to have waived strict compliance by the prior mortgagee with the provisions of articles 5693–5695, was relegated to the position occupied by the debtor, and could urge no defense to the prior lien not available to the mortgagor. Or, paraphrasing the language of Chief Justice Pleasants in the analogous case of Amonette v. Taylor, supra:

"Appellee having taken his junior lien with the recital in his deed of trust that appellant owned an outstanding lien against the property to secure a debt, he is in no better position to claim the invalidity of the lien than is the original maker of the note."

Some of our appellate courts have undertaken, without unanimity, to state the nature and purpose of articles 5693–5695, but after all that has been said in the matter those articles are inherently statutes of notice, with incidental elements of limitations and even of destruction. The chief object appears to have been to give more repose to land titles and to render more certain and stable the defenses of innocent purchasers and mortgagees. It ought not to be said that the statutes were designed to give one class of persons, who have suffered no injury, an advantage over another class of persons who have acted in good faith—to penalize the latter because, in seeking in good faith to preserve their rights, and without injury to others, they have failed to pursue the technical course laid down by the statute.

If appellee had extended credit to the debtor and obtained a mortgage upon the debtor's property as security without knowledge of a prior but unrecorded lien and debt, the statutes in question would have saved him from injury; they were enacted for that purpose. But appellee has not been injured and does not claim to be. He knew of the existing debt and lien, contracted with express reference thereto, extended credit and took his security subject thereto, knowing also that the debtor and prior creditor could extend the prior debt and lien indefinitely—that they could do just what was in fact done by them in this case. The failure of the prior creditor to have the extension evidenced by the first renewal recorded before the latter was in turn renewed and the extension thereof recorded, as was done on July 31, 1923, resulted in no injury or surprise to appellee, who in the very nature of the transaction must have anticipated that the debt would be renewed before it was barred.

The statutes do not require that the extension agreement therein provided for shall be recorded forthwith, or within any specific period, and as the second renewal was executed and a written extension evidencing it was filed and recorded before the first renewal was barred, and before suit was commenced, and as the right of no *innocent* third person had intervened, we hold that, as between the parties to the renewals and as to appellee, who contracted with reference to the right of the original parties to make the renewals, the right to plead the provisions of articles 5693–5695 was not available to appellee any more than it was available to the mortgagee. First National Bank v. Watson, supra; Amonette v. Taylor, supra; Clark v. Mussman (Tex. Civ. App.) 203 S. W. 380.

The judgment will be reversed, and judgment is here rendered establishing the superiority of appellant's lien over that of appellee, at the cost of appellee in all courts.

### On Motion for Rehearing.

The decree of the district court was that appellee's lien is first, prior and superior to that of appellant, and that both said liens, as thus declared, be·foreclosed upon the property involved, to satisfy judgments therein rendered in favor of the parties against the estate of H. E. Johnson, deceased.

In our original opinion it was provided that the judgment of the district court be reversed and judgment here rendered in favor of appellant. This is an inaccurate disposition. The judgment of this court should be that the decree of the trial court be reformed so as to declare the superiority of appellant's lien over that of appellees, but in all other respects said judgment should be affirmed, at the cost of appellee. It is so ordered.