

Edwin M. Fulton, of Gilmer, and King, Wheeler & Fulton, and W. C. Hancock, all of Texarkana, for plaintiff in error.

Storey, Sanders, Sherill & Armstrong and Geo. T. Burgess, all of Dallas, for defendants in error.

## CHERRY v. CORBAN et al.

### No. 5308.

Court of Civil Appeals of Texas. Texarkana.

July 22, 1938.

Rehearing Denied July 28, 1938.

HALL, Justice.

Plaintiff in error was plaintiff and defendant in error was defendant in the court below and will be so designated here.

Plaintiff filed this suit in the District Court of Titus County against defendants M. D. Blackburn and wife, Mary C. Blackburn, and Mrs. Corrie Corban, in form of trespass to try title to recover 80 acres of land and to cancel a certain deed executed by A. S. Mitchell, trustee, conveying said land to defendant Mrs. Corrie Corban. Plaintiff alleged the trustee's deed was void for reason that the deed of trust under which the land was sold and the debt it secured were barred.

Defendants M. D. Blackburn and wife filed a disclaimer. Defendant Corrie Corban answered with general demurrer, general denial, and plea of not guilty, and alleged further that in December, 1922, plaintiff executed a deed of trust to secure certain notes given by him as part of the purchase price for the land in controversy to defendant M. D. Blackburn; that short-

ly thereafter said notes together with the deed of trust securing same were transferred to defendant Corrie Corban by said Blackburn; that defendant Corrie Corban in fact had always been the legal holder and owner of said notes and deed of trust. This defendant alleged further that plaintiff made default in payment of said notes and the property here in controversy was by A. S. Mitchell, the trustee in said deed of trust, sold to satisfy the balance due on said indebtedness and that she became the purchaser thereof at said sale. This defendant specially denied that the debt and the deed of trust securing same were barred before the date of the sale of said land by the trustee for the reason that plaintiff acknowledged in writing said indebtedness and promised to pay same prior to the time said indebtedness would have been barred. The facts reveal that the notes secured by the deed of trust were four in number, payable to M. D. Blackburn, the last being due and payable on or before November 1, 1925. The sale under the deed of trust and the trustee's deed conveying said property to Mrs. Corban were of date February 4, 1930, admittedly more than four years from the original date of maturity of the last note. On December 15, 1925, plaintiff wrote the following letter to Mrs. Corrie Causey (now Mrs. Corrie Corban):

"I am sending you check for $50. I received your letter yesterday I certainly appreciate your waiting for bal until next fall. Please let me know amount of bal."

On December 24, 1928, plaintiff wrote the following letter to M. D. Blackburn:

"I am sending you a check for $20 to be credited on note. I am slow but done my best. Hope you will be easy on me."

On October 26, 1929, M. D. Blackburn wrote the following registered letter to plaintiff:

"As you do not see fit to advise me what you intend to do about the payment to Mrs. Corban on the land note she holds on your place, she has declared the entire amount due, and this letter is your notice that she has elected to declare the entire amount now due, and that notices of sale will be posted within the next few days advertising the property for sale to satisfy the debt."

In reply to this last letter plaintiff on October 31, 1929, wrote M. D. Blackburn as follows:

"The reason I did not to sooner I was not done gathering and did not know what I could do. I think it unfair for you to do wat you are threatening to do for this is one of the shortest cotton crops we have had for years. You said I did not only inst. Last year. I think I paid a little more than ins. Send me statement and I hope you will be more reasonable than your said letter."

On November 14, 1929, plaintiff wrote the following letter to M. D. Blackburn:

"I can pay $40 if you are willing to wait for bal. Until next fall. I liked about $75 making expences this year."

The facts show further that M. D. Blackburn is the son-in-law of Mrs. Corrie Corban and was her agent, and was acting as her agent in the collection of this indebtedness, and also that the notes though payable to Blackburn, were in fact the property of Mrs. Corban and that the indebtedness evidenced by these notes secured by the deed of trust was the only indebtedness owing by plaintiff to either Blackburn or Mrs. Corban.

Trial was to the court without a jury, which resulted in judgment for defendant, from which plaintiff prosecutes this appeal.

The controlling question presented by this appeal is: Were the letters written by plaintiff to defendant Mrs. Corban and her son-in-law, Blackburn, together with the supporting evidence in this record, sufficient in law to constitute a written acknowledgment of the justness of said indebtedness secured by said deed of trust and imply a promise to pay same so as to toll the statute of limitation? In our opinion, this question must be answered in the affirmative. These letters taken singly or collectively express a desire on the part of plaintiff that the holder of said notes shall be lenient and not enforce payment according to their terms. The dominant theme of one and all of them is an acknowledgment of the justness of said indebtedness, for nowhere in any of said letters is there contained a word to the effect that this indebtedness is unjust. The plaintiff was simply asking for more time in which to pay a just debt. These letters were couched in the language of plaintiff, and clearly import an acknowledgment of a debt. There can be no question in this case as to the indebtedness plaintiff was referring to in said letters. There was only one debt owing by him to either of

the parties addressed, and plaintiff and defendant, Mrs. Corban, were the original debtor and creditor, respectively, in the transaction. We hold, then, that these letters taken in connection· with the undisputed evidence in this record constitute in law an unqualified and unequivocal acknowledgment in writing of the justness of said indebtedness and meet the requirements of Article 5539, R.C.S. This being true, an implication is raised of a new promise.to pay said indebtedness. Elsby v. Luna, Tex.Com.App., 15 S.W.2d 604; Power v. Westhoff, Tex.Civ.App., 4 S.W. 2d 274, and authorities there cited. In Elsby v. Luna, supra, Justice Critz quotes with approval the following rule (page 605):

"An unqualified and unequivocal acknowledgment in writing on the part ,of the debtor, of the existence of the indebtedness, unaccompanied by expressions indicating an unwillingness to pay same, will raise·the implication of a new promise to pay the indebtedness."

In Martin v. Somervell County, 21 Tex. Civ.App. 308, 52 S.W. 556, writ refused, it is said (page 557):

"It is well settled that an unqualified acknowledgment of an existing debt, unaccompanied by an expression of unwillingness to pay, implies a promise to pay the debt so acknowledged."

It was not necessary that plaintiff by his letters acknowledge any particular sum, for, as said in Combination Oil & Gas Co. v. Brady, Tex.Civ.App., 96 S.W.2d 415, 416:

"No specific sum need be acknowledged to be due, if the acknowledgment is sufficiently broad as to include the debt, and sufficiently particular to show that it was the subject matter of the contract."

Plaintiff makes the further contention that the acknowledgment of the indebtedness not being in compliance with Article 5522, R.C.S., the deed of trust lien became barred four years after the date of maturity of the last note as shown on the face of said note and the acknowledgment of said indebtedness as expressed in the letters heretofore copied would not effect an extension of the deed of trust lien. We do not agree with this contention. On the contrary, it is our opinion that the extension of said indebtedness in writing by the original parties to this transaction in accordance with requirements of R.C.S., Article 5539, and no rights of innocent parties having intervened, by implication of law, also extended the deed of trust lien for a like period. In Farmers' Life Ins. Co. v. Wolters, Tex. Com.App., 10 S.W.2d 698, it is said (page 703):

"In Watson v. First Nat. Bank (Tex. Com.App.) 285 S.W. 1050, it was held the amendment of the statutes of limitations, prescribing that renewals of liens should be in writing and duly registered, does not apply to an express agreement between the parties. It has further been held that these statutory provisions for extension of the lien are not exclusive and do not prevent any other method, which would otherwise be sufficient as between the parties. Jolly v. Fidelity Union Trust Co., (Tex. Com.App.) [118 Tex. 58], 298 S.W. 530 [10 S.W.2d 539]. See also, Amonette v. Taylor, (Tex.Civ.App.) 244 S.W. 238, writ refused; Russell-Coleman Oil Mill v. Johnson (Tex.Civ.App.) 287 S.W. 134.

"As between the parties, the lien being an incident to the debt and the debt having been by them extended, the lien was by implication of law likewise extended, and, the trustee's sale being within the time thus extended, the judgment of the trial court, permitting the recovery of the land, was proper."

The trustee's sale in this instance was within the time of extension afforded by said letters and no rights of innocent parties were affected. The case of Stone v. Watt, Tex.Civ.App., 81 S.W.2d 552, writ refused, is authority for our holding herein.

We have carefully examined all other assignments brought forward and in our opinion they are without merit and are respectfully overruled.

The judgment of the trial court is in all things affirmed.

WILLIAMS, J., not sitting.