**RUTLAND SAV. BANK v. SEEGER et al.**

**No. 10688.**

Court of Civil Appeals of Texas. Galveston.

Feb. 9, 1939.

Rehearing Denied March 16, 1939.

Renfro & Kilgore, of Dallas, for appellant.

W. S. Barron, of Bryan, and W. M. Hilliard, of Caldwell, for appellees.

CODY, Justice.

The district court of Burleson County adjudged to appellee an undivided half interest in three certain tracts of land in Burleson County, free and clear of a judgment by one of the District Courts of Dallas County which awarded appellant a foreclosure against the whole interest in such three tracts. Appellee was not a party to the Dallas County suit; her former husband was defendant in the Dallas County suit, and the three tracts of land belonged to the community estate of appellee and W. A. Boyett before their divorce on October 28, 1922. And appellee based her claim to an undivided half interest in the land on the ground that she had never been divested of her interest acquired while the wife of W. A. Boyett.

W. A. Boyett, on February 20, 1920, borrowed $30,000 from Deming · Investment Company. He was then married to appellee. $25,000 of the loan was evidenced by a note secured on the three tracts of land by a first deed of trust lien: and most of the $25,000 note was to extend the indebtedness for the unpaid purchase money. The remainder of the loan, together with the interest on the $25,000 note, was made payable in five notes, which were secured by a second deed of trust lien, which were as follows:

| | | |
|---|---|---|
| Note No. 1 for $3,700.00 | due February 1, | 1921. |
| Note No. 2 for $3,550.00 | " " " | 1922. |
| Note No. 3 for $ 900.00 | " " " | 1923. |
| Note No. 4 for " | " " " | 1924. |
| Note No. 5 for " | " " " | 1925. |

The Deming Investment Company sold the $25,000 note soon after its execution to appellant, but retained the second lien notes. Note No. 2 was not paid when due, and the second lien securing its payment was foreclosed on September 5, 1922 (a little more than a month before appellee divorced Boyett), and E. E. Ford bought in the land at the foreclosure sale. Thereafter, on February 14, 1924, Ford reconveyed the land to Boyett, pursuant to a contract of sale made on January 1, 1923: the consideration for the conveyance being $9,507.30, and the assumption by Boyett of the $25,000 note, and of the last two second lien notes for $900 each.

The $25,000 note was not paid at maturity, on February 1, 1930; and was renewed by Boyett to the extent of $22,000. Thereafter, he defaulted, and appellant filed suit against him thereon in one of the district courts of Dallas County, and to foreclose the first deed of trust lien; and on May 30, 1936, recovered judgment against Boyett on the note for $22,748, together with foreclosure of lien. Under such judgment of foreclosure the three tracts of land were duly advertised for sale in Burleson County, on August 4, 1936. Appellee, who had married her present husband in 1932, filed the present suit for an undivided half of the land, and

for injunction against the sale, on August 1, 1936.

Appellee brought her suit in trespass to try title to an undivided half of the property. She alleged, too, that at the time the deeds of trust (February, 1920) were executed, 200 acres of the land was her homestead, and that appellant, through its agent, Deming Investment Company, knew of her homestead interest; and that at the suggestion of Deming Investment Company, Boyett induced his father to deed a lot in College Station to him to be designated as a homestead, but that such property was not her homestead. She further alleged that the $30,000 loan as evidenced by the first lien note for $25,000 and the second lien notes totalling $9,950 were usurious. She alleged further that she and Boyett were not living together in the summer of 1922, and that at that time the Deming Investment Company, with the knowledge and consent of appellee, agreed that the second lien would be foreclosed, and the land was bought in by Deming Investment Company and reconveyed to Boyett for the purpose of purging the notes of usury, and for the further purpose of vesting the legal title in Boyett, but in trust for her. She further alleged that the foreclosure was made pursuant to the conspiracy, and that the property was bought in in the name of Ford, but that the deed from the trustee to Ford (and the quit claim from Boyett to Ford) and the deed from Ford to Boyett were all simulated transactions. She alleged that the original note for $25,000 was barred by limitations and that she was not bound by its renewal. She alleged that her delay in bringing the suit was because she knew nothing of the fraudulent transactions until in June or July of 1936.

Boyett filed a disclaimer to the undivided half interest claimed by appellee, his former wife.

Appellant's answer consisted of a general demurrer, a plea of limitations, a plea of not guilty, and special answer: in its special answer appellant alleged, among other things, the foreclosure of September, 1922, the divorce of appellee from Boyett in October, 1922, and the resale of the land by Ford to Boyett in February, 1924. It further alleged that Deming Investment Company was not its agent, but that it had agreed to purchase the $25,000 note if the loan was closed and secured by a valid lien; and that it relied on its attorney to

see that a valid lien was created. It alleged that Boyett and appellee had a homestead in College Station at the time the loan was originally made, but if not that they were estopped to claim otherwise; they having so represented. Appellant further alleged that Boyett as the maker of the original vendor's lien notes, which were extended by the $25,000 note, had legal authority to agree to extend such indebtedness, and the lien securing it. Appellant alleged that if appellee owned any interest in the land it was subject to its judgment of $22,748, obtained in the Dallas County suit, and that appellee had made no tender thereon, and that if the court found appellee owned any interest in the land, she be required to pay appellant's judgment in a reasonable time.

The trial was before a jury. At the conclusion of the trial, both parties filed motions for instructed verdicts. The court instructed a verdict in favor of appellee; and from the judgment rendered on it appellant has appealed.

■ We believe the learned trial court erred in peremptorily instructing a verdict in this case. The loan contract of February, 1920, was not usurious. Boyett v. Rutland Savings Bank, Tex.Civ.App., 116 S.W.2d 857. And there was evidence which would have supported the conclusion that the foreclosure sale of September 5, 1922, at which Ford bought in the property, was a good-faith foreclosure; and so of the good-faith quitclaim of the land from Boyett to Ford, and of the good-faith reconveyance of it to Boyett from Ford. And under the evidence the question with reference to whether 200 acres of the property was the homestead of appellee and her then husband, at the time of the February, 1920, loan, was a jury question; not to mention appellant's defense of estoppel to deny that the residence at College Station then constituted appellee's homestead. Furthermore, it appears that the $25,000 note was given for the purpose of taking up the unpaid portion of purchase money notes which were then secured by vendor's liens on the three tracts of land in controversy. What proportion of the $25,000 note was made up of indebtedness secured by a vendor's lien on the 200 acres claimed as a homestead by appellee does not appear.

■ Appellee contends that the renewal contract between Boyett and appel-

lant whereby the unpaid part of the $25,-000 note was renewed and extended after its maturity was ineffective to continue the lien in force on the land, so far as her right in such land was concerned; and concludes that the lien, so far as her interest in the land was concerned, became barred four years after the $25,000 note had matured on February 1, 1930. She cites Grandjean v. Runke, Tex.Civ.App., 39 S.W. 945, 946, as supporting such contention. The facts in that case were these: That on May 21, 1891, Ulysses Grandjean gave plaintiff a promissory note; in 1894, Grandjean and his wife were divorced, and their community property divided between them; and thereafter, in 1895, Grandjean renewed and extended his note to plaintiff; the question before the court was whether the community property that had been awarded the wife could be subjected to the payment of the debt. Said the court: "The note having been made during appellant's marriage, the community property of herself and husband not exempt from execution was liable for its payment. Upon the dissolution of the marriage, she became jointly liable with her divorced husband for its satisfaction, to the extent of the community property received by her. But, when the marriage was dissolved, the husband could not bind her or her interest in the community estate by contracting for an extension of the time for the payment of the note; yet, while such contract did not affect appellant, it did not relieve her, or her property received from the community, from liability for such indebtedness, for the note, as to her, remained as originally made, and, four years not having elapsed from the time it became due until suit was filed, appellee's cause of action was not barred."

The instant case is easily distinguishable from the one just quoted from. In the instant case the indebtedness was secured by a lien upon certain specified property, which was in full force and effect at the time of the divorce. Such lien was a mere incident of the debt which it secured. Another incident of that debt was the right of Boyett, who was personally liable thereon, and appellant to renew and extend it at its maturity, if it was not then paid. See Russell-Coleman Oil Mill v. Johnson et al., Tex.Civ.App., 287 S.W. 134; Amonette v. Taylor, Tex.Civ.App., 244 S.W. 238, writ of error denied. When the $25,000 note matured on February 1, 1930, appellant might at that time have filed suit and proceeded against Boyett personally, or might have foreclosed its lien on the mortgaged property, and if the proceeds therefrom were not sufficient to pay the mortgage debt, it might have proceeded against any property in the hands of appellee derived from the former community estate of herself and Boyett to satisfy the "deficiency", or have gone against community property in Boyett's hands, or against his separate property. Of course, after more than four years had passed from February 1, 1930, the right of appellant to make up any "deficiency" out of community property belonging to appellee, and which did not secure the indebtedness as renewed, would be barred. The Grandjean case, supra, is authority for this conclusion. But the power and right of Boyett to renew and extend the unpaid portion of the indebtedness evidenced by the $25,000 carried with it the power and right, as a mere incident, to extend the lien securing the payment of such debt. As between Boyett and appellee, the mortgaged land was primarily liable for the payment of the debt which it secured. This being true, we see no reason why, if Boyett and the appellant renewed the debt secured by a lien on the land in controversy, the lien did not continue to secure the mortgage debt, as so secured and extended.

For the error in peremptorily instructing the jury to return a verdict for appellee, the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

Reversed and remanded.