In re Norvell BRUCE and Dianna Key Houston, Debtors.

Norvell BRUCE and Dianna Key Houston, Plaintiffs,

v.

REPUBLICBANK—SOUTH AUSTIN, Defendant.

Bankruptcy No. 87–11329.
Adv. No. 87–1281.

United States Bankruptcy Court, W.D. Texas, Austin Division.

Jan. 8, 1989.

Albert J. Heinrich Jr., Goldston, Ponder & Heinrich, Austin, Tex., for debtors.

Evelyn N. Howard–Hand, Kammerman & Overstreet, P.C., Austin, Tex., for defendant.

Ray Hendren, Chapter 13 Trustee, Austin, Tex.

## MEMORANDUM OF DECISION

LEIF M. CLARK, Bankruptcy Judge.

At San Antonio, Texas, came on for trial the foregoing cause. Upon consideration thereof, the court enters this decision and order as its findings and conclusions and as the judgment thereon.

## BACKGROUND FACTS

On September 3, 1982, Norvell and Dianna Houston, the debtors in this Chapter 13 bankruptcy case, executed a $65,000 note, payable on demand or in five months. The note was secured by a builders & mechanics lien with power of sale (the "B & M lien"). The B & M lien was assigned to RepublicBank–South Austin, the defendant in this case ("the bank"). The B & M lien was duly recorded in the proper county and the improvements were properly done. Shortly before the note's maturity, on December 27, 1982, a new note was executed. This new note did not on its face evidence that it was an extension or renewal of the original note, though all parties agree that everyone thought that was what they were doing. This new note was not acknowledged, recorded, or signed by the bank. The debtors made payments on this new note until mid–1985, when they defaulted. As of the date of trial, $88,669.96 remained due on the indebtedness. No third parties have been either prejudiced or otherwise affected by the transactions in question.

This chapter 13 case was filed July 7, 1987. Confirmation has been delayed pending the outcome of this litigation, under which the debtors seek to avoid the lien on their homestead under either state law regulating limitations of actions to enforce

such liens or under the strong arm powers of the Bankruptcy Code. If the debtors cannot avoid the lien, their plan will be difficult (if not impossible) to perform.

## ISSUES PRESENTED

At trial, the parties focused their legal arguments on the split of authority over the interpretation of Texas' statutory scheme regulating limitations on actions by the holders of liens such as the B & M lien here in question. *See* Tex.Rev.Civ.Stat. Ann., arts. 5520, 5522 (Vernon 1958), *codified at* Tex.Civ.Prac. & Rem.Code, §§ 16.-035–16.037 (Vernon 1986).[1] The thrust of the debtors' arguments is that either the renewal and extension is not effective under state law as an extension of the statute of limitations against the debtors personally because it was not recorded or, in the alternative, is not enforceable against a third-party bona fide purchaser for value, because it was not recorded, so that, under Section 544(a)(3) of the Bankruptcy Code, the lien can be avoided.

Articles 5520 and 5522 address the time period within which the holder of such a lien such as this must commence enforcement. If a renewal or extension is executed, it may operate as a waiver of the limitations period. *First National Bank in Canyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100, 102 (Tex.Com.App.—1939) (a trust deed is extended by written acknowledgement of the debt instrument beyond the limitations period); *accord, Cherry v. Corban*, 119 S.W.2d 111, 113, (Tex.Civ.App. —Texarkana 1938, no writ); *Wilkinson v. First Nat. Bank of Crosbyton*, 118 Tex. 202, 13 S.W.2d 346, 348 (Tex.Com.App.— 1929). Some cases hold that, if the waiver has not been recorded in the property records, it may not be enforced, not even against the debtors themselves. *See, e.g., Adams v. Harris*, 190 S.W. 245, 246 (Tex.Civ.App.—Texarkana 1917, no writ). Other courts hold that the unrecorded waiver is unenforceable only against third parties, i.e., the debtors will not be permitted to urge that limitations has run if there is a waiver, even though the waiver is unrecorded. *Watson v. First National Bank of Coleman*, 285 S.W. 1050, 1051 (Tex.Com. App.—1926). The court at the conclusion of trial held that the latter rule of state law controls in this case.

The lien can thus be avoided only if the debtors can employ the status of hypothetical bona fide purchasers for value available under Section 544(a)(3) of the Bankruptcy Code (the so-called "strong-arm powers"). The court then instructed the parties to brief this issue, as there is a split of authority over whether a Chapter 13 debtor can employ the avoidance powers of Chapter 5. *Compare In re Boyette*, 33 B.R. 10 (Bankr.N.D.Tex.1983); *In re Einoder*, 55 B.R. 319 (Bankr.N.D.Ill.1985); *In re Freeman*, 72 B.R. 850 (Bankr.E.D.Va.1987); *In re Ottaviano*, 68 B.R. 238 (Bankr.D.Conn. 1986); *In re Weaver*, 69 B.R. 554 (Bankr. W.D.Ky.1987) (holding in general that the debtor *can* employ the avoidance powers) *with In re Carter*, 2 B.R. 321 (Bankr.D. Colo.1980); *In re Walls*, 17 B.R. 701 (Bankr.S.D.W.V.1982); *In re Driscoll*, 57 B.R. 322 (Bankr.W.D.Wis.1986); *In re Mast*, 79 B.R. 981 (Bankr.W.D.Mich.1987) (holding in general that the debtor in Chapter 13 lacks standing to bring avoidance actions).

## ANALYSIS

In general, the provisions of Chapters 1, 3, and 5 of the Bankruptcy Code apply to cases pending under Chapters 7, 11, 12, and 13. 11 U.S.C. § 103(a). The debtor in Chapter 11 is authorized to exercise the avoidance powers, because, as debtor-in-

---

1. The Texas Legislative Council is required by law (Article 5429b–1, Vernon's Texas Civil Statutes) to carry out a complete nonsubstantive revision of the Texas statutes. The process involves reclassifying and rearranging the statutes ... and improving the draftsmanship if practicable—all toward promoting the stated purpose of making the statutes "more accessible, understandable and usable: without altering the sense, meaning, or effect of the law." The Civil Practice and Remedies Code is a nonsubstantive revision of the Texas statutes relating to civil procedure and civil remedies and liabilities.
 1 Tex.Civ.Prac. & Remedies Code, Forward to Proposed Code (Revisor's Report, April 1984) (Vernon 1986).

possession, the debtor has the standing of a trustee. 11 U.S.C. § 1107. In chapter 13, by contrast, there is a separate trustee, though the trustee's role is somewhat different than it would be in chapter 7 or even chapter 11.

> The essential role of a Chapter 13 trustee is to review plans, advise the Court with respect to plans and act as a disbursing agent under confirmed plans. The Chapter 13 trustee is not in a position to litigate actions under avoiding powers.... the Chapter 13 trustee has no economic interest in pursuing such litigation.

*In re Einoder*, 55 B.R. at 323. The debtor in Chapter 12 (the family farmer bankruptcy chapter) by contrast, is granted powers nearly identical to those of a debtor-in-possession in Chapter 11, with only the investigative and distributive functions assigned to the Chapter 12 trustee. 11 U.S.C. § 1203. It would be a mistake to read too much into Section 1203, however. The chapter, created in 1986, was described by its sponsor as experimental, with a seven-year sunset provision. 132 Cong Rec S15076 (daily ed. Oct. 3, 1986, remarks of Sen. Grassley).[2] The intent was to borrow those features of Chapter 13 which contributed to efficiency and speed, while preserving the powerful Chapter 11 tools of reorganization. Anderson, "An Analysis of Pending Bills to Provide Family Farm Debtor Relief under the Bankruptcy Code," *reprinted in* 132 Cong Rec S15076, S15087 (daily ed. Oct. 3, 1986). As a hybrid, Chapter 12 has little to teach us about statutory interpretation of Chapter 13.

Section 1303 specifically grants the Chapter 13 debtor certain powers which would otherwise be reserved to the trustee. 11 U.S.C. § 1303. This statutory grant does not include the avoidance powers. However, the legislative history includes floor comments to the effect that the section "does not imply that the debtor does not also possess other powers concurrently with the trustee. For example, although Section 323 is not specified in section 1303, certainly it is intended that the debtor has the power to sue and be sued." 124 Cong Rec H11106 (Sept. 28, 1978, remarks of Rep. Edwards). A number of courts have relied on this floor comment to find a "sharing" of the trustee's other powers with the debtor, including the avoidance powers. The most eloquent spokesman for this position is Judge Robert Ginsberg, of the Northern District of Illinois, who argues that

> [t]he absence of a Chapter 13 equivalent to § 1107 makes sense. The debtor in Chapter 13 is not the same as a Chapter 11 debtor-in-possession. There is always a trustee in a Chapter 13 case.... [a] Chapter 13 debtor, although remaining in possession of his or her assets, does not have *all* of the powers of a trustee. The Chapter 13 trustee, for example, retains the exclusive power to investigate the debtor's financial affairs, presumably to be able to comment intelligibly on the debtor's proposed plan. The most logical analysis is that the Chapter 13 trustee has *some* of the trustee's powers, i.e., those necessary to carry out the trustee's assigned functions ... while the remaining trustee's powers vest in the Chapter 13 debtor. The Chapter 13 trustee has no need to pursue any avoiding powers to carry out any duties assigned to the Chapter 13 trustee by the Code.

*In re Einoder*, 55 B.R. at 323–24; *accord In re Ciavarella*, 28 B.R. 823, 827 (Bankr.

---

**2.** The legislation was clearly viewed as emergency surgery employed to cure an immediate crisis:

> I am sure I need not remind the Members of this Chamber of the plight of our Nation's family farmers. The numbers of farms in financial trouble or on the brink of foreclosure is well known.... I hear it and see it when I go back home every weekend. I know my colleagues have seen it too. We simply must stop the displacement. We must stop

the bleeding on the farm.... [H]earings in the House and Senate led to the unmistakable conclusion that the Bankruptcy Code doesn't work for farmers.... The final product reconciles the unique attributes of farming into an existing bankruptcy framework, currently used by other small businesses and sole proprietors.

132 Cong.Rec. S15076 (daily ed. Oct. 3, 1986, remarks of Sen. Grassley).

S.D.N.Y.1983) *and In re Freeman*, 72 B.R. at 854.[3]

 As compelling, practical and intensely equitable as these arguments might be, they are at bottom well-meaning forays into judicial legislation. They exceed the scope of a bankruptcy judge's role, which is to interpret and apply the statute, not to rewrite it. *Central Trust Co. v. Official Creditors' Committee of Geiger Enterprises*, 454 U.S. 354, 359–60, 102 S.Ct. 695, 698, 70 L.Ed.2d 542 (1982) (per curiam).[4] As the Seventh Circuit recently observed,

> Any change deemed desirable on policy grounds should be addressed to Congress rather than to this court. Our duty is simply to interpret the language of the statute.

*Matter of Bundles*, 856 F.2d 815, 823 (7th Cir.1988). By the statute's own terms, only the trustee has standing to exercise the strong-arm avoidance powers. 11 U.S. C. § 544(a) ("The *trustee* shall have ... the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor [as specified] ...").[5] Legislative history, especially floor comments, may augment but may not amend the statute's straightforward language. Section 1303 simply does not confer standing on the debtor to pursue avoidance actions. As the bankruptcy court pointed out *In re Mast*,

> there does not exist any *statutory* authority for a Chapter 13 debtor to utilize avoidance powers granted to the trustee.... If Congress intended to grant avoidance powers to a Chapter 13 debtor, it could have explicitly done so.
>
> [footnote] In Sections 1107(a) and 1203 ... Chapter 11 and Chapter 12 debtors are granted *all* rights and powers of a trustee, subject to any limitations or conditions which the Court may prescribe.

*In re Mast*, 79 B.R. at 982, 982 n. 3.

The conclusion that the debtor should not be accorded standing to pursue strong-arm avoidance actions is even more compelling when the property in question is exempt property (as is the case here). Avoiding the lien benefits only the debtors. It does not benefit unsecured creditors.[6] Congress has already provided what it believed to be an adequate remedy for protecting the debtors' exempt property and thereby assuring the debtors' fresh start in Section 522(h). That section provides that

> [t]he debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section ... if—

---

**3.** The reality of a filing under Chapter 13 is that the debtors are the true representatives of the estate and should be given the broad latitude essential to control the progress of their case. [citations omitted] It is the debtors who determine whether to remain in Chapter 13 and decide how much money is to be paid to the trustee for distribution to creditors. [citations omitted] Therefore, it is only logical that they should be extended the powers possessed by the trustee which work toward enhancing their own bankruptcy estate.
*In re Freeman*, 72 B.R. at 854.

**4.** [T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms.
*Id.*

**5.** In a chapter 11 case, a committee or other party may, under limited circumstances, sue in

the name of the trustee where the trustee (or debtor-in-possession) unjustifiably refuses to pursue an avoidance action. *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1397 (5th Cir.1988). The exception does not so much confer standing on the committee or other party as is permits such a party to stand in the shoes of the party which does have standing, the trustee. Judge Ginsberg, acknowledging this option, dismissed the notion that the debtor be required to formally bring himself or herself within the exception as "an idle ceremony." *In re Einoder*, 55 B.R. at 324 n. 16. This court disagrees, however, as it is not always settled that the trustee was without justification in pursuing the avoidance action. If only the debtor will benefit, the trustee's refusal may indeed be warranted. *See* discussion *infra*.

**6.** In some circumstances, removing the lien may improve the debtor's prospects for performing on its plan, inuring to the benefit of the unsecured creditors. By the same token, however, the formerly secured claim dilutes the unsecured creditor class.

(1) such a transfer is avoidable by the trustee under [the avoidance statutes] ... and

(2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h). Section 522(g)(1), to which Section 522(h) makes reference, in turn provides that

... the debtor may exempt ... property that the trustee recovers under section ... 550 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor ...

11 U.S.C. § 522(g). The overwhelming weight of authority holds that Section 522(h) is available to Chapter 13 debtors. *See, e.g., In re Hall,* 752 F.2d 582, 590 (11th Cir.1985); *In re Willis,* 48 B.R. 295, 303 (S.D.Tex.1985); *In re Allred,* 45 B.R. 676, 677 (Bankr.E.D.N.C.1985).[7]

■ Section 522(h) is not available to these debtors to avoid this lien, as the lien was, by all accounts, *voluntary. See* 11 U.S.C. § 522(g)(1)(A). This court should not expand by judicial fiat the carefully circumscribed authority to bring avoidance actions conferred on debtors by Section 522(h), lest it undermine the obvious intentions of Congress apparent in the statute's construction.

■ There would appear to be no reason why the debtors should not, as a general principle, be allowed to seek authority to sue in the trustee's name, as do creditors' committees in Chapter 11 cases. *In re*

*Louisiana World Exposition,* 832 F.2d 1391, 1397 (5th Cir.1987). That course of action is not available to the debtors in this case, however. Even were this court to sidestep the "idle ceremony" of forcing the debtor to formally move for permission to sue in the name of the trustee, *see In re Einoder, supra* at 324 n. 16, the court cannot ignore the additional requirement that the debtors must show that the trustee's refusal to pursue the action is unjustified.

The judicial rule that permits parties to sue in the name of the trustee serves the larger purpose of enhancing the *estate* available for distribution to its creditors. *Louisiana World Exposition v. Federal Insurance Co.,* 858 F.2d 233, 250 (5th Cir. 1988). The strong-arm power itself represents an extraordinary power conferred to achieve a limited (albeit important) equitable function, to wit, to strike down secret liens and other transfers that might otherwise interfere with the trustee's primary mission of securing all the debtor's property for an equal distribution to creditors. 3 *Collier on Bankruptcy,* para. 544.-01 at 544–03 (15th ed. 1986). This power to destroy a lien by resorting to the fiction that the trustee has no knowledge of the lien,[8] while it makes sense in aid of the trustee's discharging his or her primary obligation to the estate's creditors, makes no sense when it benefits only the debtors themselves. A trustee is certainly justified in not employing the strong-arm powers where the prime directive of enhancing distribution to creditors of the estate will not be advanced by its exercise.[9] The debtors cannot therefore bring themselves within

---

7. Once again, turning to Judge Ginsberg's decision in *Einoder,*

 This Court has no doubt that § 522 applies in its entirety in Chapter 13 cases and that the Chapter 13 debtor has the full panoply of rights available thereunder.... A more generous exemption policy in Chapter 7 as compared with Chapter 13 would frustrate the congressional policy of encouraging consumer debtors to use Chapter 13 in preference to Chapter 7.

 *In re Einoder,* 55 B.R. at 324 n. 17. This court entirely agrees with Judge Ginsberg on this point.

8. Even when the "trustee" is actually the debtor-in-possession, the self-same person that entered into the "secret" lien before bankruptcy. *In re Sandy Ridge Oil Co., Inc.,* 807 F.2d 1332, 1336 (7th Cir.1986).

9. This is certainly not to say that the trustee is not *permitted* to use the strong-arm powers to avoid a lien on exempt property. If he or she does, however, the debtors in this case could not claim the property so recovered as exempt. 11 U.S.C. § 522(g)(1).

the standing exception announced in *Louisiana World Exposition*, because they cannot demonstrate that the trustee was failing to carry out his fiduciary responsibilities to the creditors of the estate to maximize the value of the estate for their benefit. *Louisiana World Exposition v. Federal Insurance Co.*, 858 F.2d 233, 250 (5th Cir. 1988).

In view of this court's primary calling as a court of equity, one final observation is in order. If the debtors are permitted to employ the Bankruptcy Code to deprive a creditor of a property right for their personal benefit, with no benefit inuring to the estate, an inequitable result ensues. It is a basic tenet of equity jurisprudence that equity should not be employed to achieve an inequitable result. 27 Am.Jr.2d, *Equity*, § 118 at 645 n. 6 (1966) and cases cited therein. The debtors should not therefore, in equity, be permitted to step into the shoes of the trustee in order to use the strong-arm powers to avoid a consensual lien on their homestead.

For all of the foregoing reasons, the court concludes that the plaintiffs' relief must be denied. Judgment should be entered in favor of the defendants.

An Order has been entered consistent with this decision.