In re Byron Jay WEIR and Lynell Yvonne Weir, Debtors.

Byron Jay WEIR and Lynell Yvonne Weir, Plaintiffs,

v.

LUBBOCK TELCO FEDERAL CREDIT UNION, Defendant.

Bankruptcy No. 595–50587–13. Adversary No. 596–5056.

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

May 30, 1997.

Becky Miller, Lubbock, TX, for Debtors.

Larry Elms, Lubbock, TX, for Credit Union.

Robert B. Wilson, Lubbock, TX, for Chapter 13 Trustee.

## MEMORANDUM OF OPINION ON DEBTORS' COMPLAINT TO AVOID LIEN

JOHN C. AKARD, Bankruptcy Judge.

Byron Jay Weir and Lynell Yvonne Weir, the Debtors in the captioned Chapter 13 proceeding (Debtors), seek to avoid a lien asserted by Lubbock Telco Federal Credit Union (Credit Union) on a 1993 Chevrolet Suburban (Suburban). The court finds that their complaint should be denied.[1]

### FACTS

On June 13, 1995, Lyn Weir, one of the Debtors in this proceeding, entered into a contract to purchase the Suburban from Nimry Autoplex, Inc. (Nimry) for a total of $23,600.00. She received a trade-in of $14,500.00 for her 1994 Chevrolet Lumina, on which the Credit Union had a lien. After various charges, the unpaid balance of the contract was $9,846.75. Upon signing of the contract, Nimry gave possession of the Suburban to Mrs. Weir.

On the same date, Mrs. Weir applied to the Credit Union for an additional advance in the amount of $9,846.75. The Credit Union approved that request which, when added to her previous loan balance, brought the total owed to the Credit Union to $27,429.07. On June 13, 1995, she signed a note to the Credit

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(F), (G) and (K).

Union for the total amount bearing interest at 12% per annum and payable in monthly installments of $608.00 beginning June 30, 1995. The note was secured by a lien on the Suburban. On the same day, the Credit Union deposited $9,846.75 into the Debtor's "share" account. This was the same account into which Mrs. Weir's paychecks were deposited. Various deposits and withdrawals were made from that account. On June 30, 1995, the first payment of $608.00 was withdrawn from that account.

On July 24, 1995, the Debtors filed for relief under Chapter 13 of the Bankruptcy Code. On the same day at a time unknown, Nimry filed an application for a new title on the Suburban showing the lien to the Credit Union with the Tax Assessor–Collector for Lubbock County. Also on that date, one of Nimry's employees signed Ms. Weir's name to a draft payable to Nimry for $9,846.75 and delivered it to Nimry's bank. Although the draft was not signed by Ms. Weir, on July 25, 1996 the Credit Union honored it by withdrawing $9,846.75 from the Debtor's share account.

The Debtors assert that the Credit Union's perfection of the lien on the Suburban constituted a transfer of an interest in the Debtors' property on account of an antecedent debt and, thus, can be avoided under § 547(b) of the Bankruptcy Code.[2] The Credit Union asserts that only a trustee can bring an avoidance action under § 547(b) and, further, that the perfection of the lien was a contemporaneous exchange which is excepted from the trustee's avoiding powers under § 547(c)(1).

### STATUTES

Several provisions of the Bankruptcy Code and of the Texas Transportation Code have a bearing on this case. In pertinent part, they include:

### Preferences

§ 547. Preferences.

. . . .

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider, and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

### Debtor's Avoidance Powers

§ 522. Exemptions.

. . . .

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

. . . .

(B) a nonpossessory, nonpurchase money security interest in any—

(i) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or

---

**2.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

household use of the debtor or a dependent of the debtor,

(ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor, or

(iii) professionally prescribed health aids for the debtor or a dependent of the debtor.

. . . .

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor, and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoid such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

(i)(1) If the debtor avoids a transfer or recovers a setoff under subsection (f) or (h) of this section, the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) of this section.

(2) Notwithstanding section 551 of this title, a transfer avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, under subsection (f) or (h) of this section, or property recovered under section 553 of this title, may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection (g) of this section or paragraph (1) of this subsection.

## Powers of the Chapter 13 Debtor and Trustee

§ 1303.   Rights and powers of debtor.

Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), and 363($l$)[3] of this title.

§ 1302.   Trustee.

. . . .

(b) The trustee shall—

(1) perform the duties specified in sections 704(2), 704(3), 704(4), 704(5), 704(6), 704(7), and 704(9)[4] of this title;

(2) appear and be heard at any hearing that concerns—

(A) the value of property subject to a lien;

(B) confirmation of a plan; or

(C) modification of the plan after confirmation.

(3) dispose of, under regulations issued by the Director of the Administrative Office of the United States Courts, moneys received or to be received in a case under chapter XIII of the Bankruptcy Act;

(4) advise, other than on legal matters, and assist the debtor in performance under the plan; and

(5) ensure that the debtor commences making timely payments under section 1326 of this title.

---

**3.**   Section 363 concerns the use, sale, or lease of property.

**4.**   Basically the duties of the trustee in § 704 are to account for funds received, to investigate the debtors activities, and to file a final report.

(c) If the debtor is engaged in business, then in addition to the duties specified in subsection (b) of this section, the trustee shall perform the duties specified in sections 1106(a)(3) and 1106(a)(4)[5] of this title.

### Texas Transportation Code

§ 501.111.  Perfection of Security Interest

(a) Except as provided by Subsection (b),[6] a person may perfect a security interest in a motor vehicle that is the subject of a first or subsequent sale only by recording the security interest on the certificate of title as provided by this chapter.

§ 501.113.  Recordation of Security Interest

(a) Recordation of a lien under this chapter is considered to occur when the county assessor-collector:

(1) is presented with an application for a certificate of title that discloses the lien with tender of the filing fee.; or

(2) accepts the application.

(b) For purposes of Chapter 9, Business & Commerce Code, the time of recording a lien under this chapter is considered to be the time of filing the security interest.

### DISCUSSION

### Violation of the Automatic Stay

■ The Debtors note that the application for title certificate was presented to the Lubbock County Tax Assessor–Collector on the same day they filed for relief under Chapter 13 of the Bankruptcy Code. Pursuant to Texas Transportation Code §§ 501.111 and 501.113, the lien was perfected by filing the application for certificate of title that disclosed the lien with the assessor-collector. The Debtors suggest that if the application for certificate of title was presented to the assessor-collector later in the day than the filing of their Chapter 13 petition, perfection would violate the automatic stay of § 362 of the Bankruptcy Code. However, the Debtors acknowledge that they cannot establish the

time of day at which the certificate of title was presented to the assessor-collector. The Debtors have the burden on this issue and, since they cannot establish that the title certificate was presented to the assessor-collector after they filed their bankruptcy petition, they did not meet that burden. Therefore, the court cannot find that a violation of the automatic stay occurred.

### Does the Chapter 13 debtor have the avoiding powers of a trustee?

The threshold issue is whether the use of the term "trustee" in § 547 includes a Chapter 13 debtor. Section 101, the general definition section of the Bankruptcy Code, contains no definition of that term. Pursuant to § 103(a), Chapters 1, 3 and 5 of the Bankruptcy Code apply to a case under Chapter 13. Thus § 547, as a part of Chapter 5, applies to a Chapter 13 case. Section 1107 specifically grants all of the powers of a Chapter 7 trustee to the debtor-in-possession in a Chapter 11 case. Chapter 13 contains no corresponding provision. The sections quoted above which outline the powers and duties of the Chapter 13 trustee and the Chapter 13 debtor do not mention § 547. Are we thus led to the conclusion that § 547 applies to Chapter 13, but no one has the authority to utilize it? The court is not persuaded that Congress intended such a result.

The Debtors assert that they have committed all of their disposable income to their Chapter 13 plan for a period of five years. Therefore, if the Credit Union is treated as a secured creditor to the value of the Suburban, the bulk of their payments would go to the Credit Union. There would be only a very small distribution to the unsecured creditors. The Credit Union note called for sixty monthly payments which would last the entire term of this Chapter 13 plan. The Debtors assert that if the Credit Union's claim is unsecured, its claim would fall into the pool of unsecured creditors and the distribution to unsecured creditors would be

---

**5.**  The trustee's duties under § 1106(a)(3) and (a)(4) are basically to investigate the activities of a debtor engaged in business.

**6.**  Subsection (b) is inapplicable in the instant case.

substantially larger. They state that even with the large unsecured claim of the Credit Union, other unsecured creditors would receive more than they would receive with the Credit Union being treated as secured.

Although § 103(a) provides that the provisions of Chapter 5 apply to a Chapter 13 case, neither § 1302 nor § 1303 specifically grant the Chapter 13 trustee or the Chapter 13 debtor the avoiding powers of a trustee under §§ 544, 545, 547, 548 and 549. A number of courts have held that the Chapter 13 debtor has one or more of these avoiding powers. *See, e.g., Freeman v. Eli Lilly Fed. Credit Union (In re Freeman),* 72 B.R. 850 (Bankr.E.D.Va.1987) (§ 544(a)(3)); *Einoder v. Mount Greenwood Bank (In re Einoder),* 55 B.R. 319 (Bankr.N.D.Ill.1985) (§ 547); *In re Boyette,* 33 B.R. 10 (Bankr.N.D.Tex.1983) (§ 544(a)(3)); *Russo v. Ciavarella (In re Ciavarella),* 28 B.R. 823, 828 (Bankr.S.D.N.Y. 1983) (§ 547(b)). These courts note that the legislative history of § 1303 states that it is not intended to imply that the debtor does not also possess other powers concurrently with the trustee. *Boyette,* 33 B.R. at 10. Judge Robert E. Ginsberg's thorough and well-reasoned opinion in *Einoder* points out that considering the realities of Chapter 13 practice, the debtor is the most appropriate party to seek recovery under the avoiding powers. The Chapter 13 trustee's function is to administer the case. Thus, the trustee has little incentive to set aside fraudulent transfers. Further, the best interest of creditors test under § 1325(a)(4) requires that transfers subject to avoidance be brought into the Chapter 13 estate for the benefit of the unsecured creditors. *Id.*

Another line of cases holds that Chapter 13 debtors do not have the trustee's avoiding powers. *See, e.g., In re Redditt,* 146 B.R. 693 (Bankr.S.D.Miss.1992); *Bruce v. RepublicBank (In re Bruce),* 96 B.R. 717 (Bankr. W.D.Tex.1989); *In re Carter,* 2 B.R. 321 (Bankr.D.Colo.1980). These courts point to the specific enumeration of the debtors' powers and duties in § 1303 and conclude that in order for debtors to have avoiding powers, the powers must be specifically granted by statute. *Bruce* suggests that the powers be-

long to the trustee, but that the debtor can exercise those powers upon application to the court similar to the right of a creditors' committee to exercise such powers with court approval in a Chapter 11 case. 96 B.R. at 722.

One court has gone both ways on this issue. *See In re Hall,* 26 B.R. 10 (Bankr. M.D.Fla.1982) (holding that a Chapter 13 debtor has avoiding powers); *But see In re Tillery,* 124 B.R. 127 (Bankr.M.D.Fla.1991 ) (retreating from its earlier decision in *Hall* and finding that a Chapter 13 debtor does not have avoiding powers). However, most courts hold that Chapter 13 debtors can utilize the avoiding powers with respect to exempt property contained in § 522(h). *Willis v. Borg–Warner Acceptance Corp. (In re Willis),* 48 B.R. 295 (Bankr.S.D.Tex.1985); *Bruce,* 96 B.R. at 722.

### CONCLUSION

The Debtors claimed the Suburban as exempt in their schedules filed in the case. Section § 522(h) specifically describes a debtor's use of the avoiding powers with respect to exempt property. The court finds that it must follow the specific statutory direction of Congress, rather than inferring authority from the reference to Chapter 5 in § 103(a).

Section 522(h)(1) allows the debtor to avoid a transfer of property which is avoidable by a trustee under § 547 if the debtor could have exempted such property under § 522(g)(1). The latter section restricts the debtors avoiding powers to involuntary transfers. In this case, Mrs. Weir voluntarily gave the Credit Union a lien on the Suburban. Therefore, the Debtors cannot avoid the lien. In view of its conclusion, it is not necessary for the court to address the other contentions of the parties.

JUDGMENT ACCORDINGLY.[7]

---

**7.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.

BANKR. P. 7052 which is made applicable to Con-
tested Matters by FED. R. BANKR. P. 9014.   This

Memorandum will be published.