**In re Thomas Platt QUIRK.**

**CALCASIEU MARINE NATIONAL BANK**

v.

**Rudolph O. YOUNG.**

**Civ. A. No. 90–0314.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Aug. 31, 1990.

Mary Louise Fullington, Carmouche, Gray & Hoffman, Lake Charles, La., for plaintiff Calcasieu Marine Nat. Bank.

John Lee Van Norman, III, Lake Charles, La., for defendant Young.

RULING

LITTLE, District Judge.

From 1984–1986 Thomas Platt Quirk executed several collateral mortgage notes to the Calcasieu Marine National Bank encumbering lots 11, 12, 13 and 14 of Dreamland subdivision and lot 13 of Slumberland subdivision (lots 12, 13, and 14 of Dreamland comprise "The Reef" restaurant). Mr. Quirk was married to Karen Lacroix Quirk when the collateral mortgages were executed, and signatures purporting to be those of Mrs. Quirk appeared on the collateral documents. Mrs. Quirk's signatures are forgeries.

On 29 December 1988, Mrs. Quirk, in a court approved matrimonial agreement which partitioned community property, conveyed her undivided one-half interest in lot 11 of Dreamland and lot 13 of Slumberland to Mr. Quirk. In that community property partition Mr. Quirk assumed the indebtedness on these properties and the indebtedness on The Reef. On 30 December 1988 Mr. Quirk signed a promissory note to Calcasieu Marine in the amount of $113,728.47; this note was secured by the pledge of the collateral notes and mortgages.

On 19 May 1989 Mr. Quirk filed for relief under Chapter 7 of the Bankruptcy Code. On 23 June 1989 Calcasieu Marine filed a claim for $113,588.43, the indebtedness represented by Quirk's promissory note. Miss Quirk then executed a ratification of the

collateral mortgage documents which bore her forged signature. Rudy Young, the estate's trustee, filed an objection to the bank's claim reasoning that the forged signatures rendered the collateral mortgages null and that the priority created by the ratification was preferential and without effect. The bankruptcy court subsequently ruled that Calcasieu Marine's claim was unsecured. That ruling promoted this appeal.

The bankruptcy court's decision is founded upon various conclusions of law which are subject to de novo review. Factual findings are reviewed under a clearly erroneous standard. *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1252 (5th Cir.1986); *In re Continental Airlines Corp.*, 907 F.2d 1500, 1511 (5th Cir.1990).

The arguments advanced by the two parties in this appeal are essentially the same as their arguments before the bankruptcy court. Appellee trustee claims that the Bankruptcy Code vests in him the power to avoid the mortgages as unperfected security interests. Appellant Calcasieu Marine asserts that the mortgages are valid as relative nullities that were later confirmed by Miss Quirk.

The Bankruptcy Code delineates the powers of a bankruptcy trustee at 11 U.S.C. § 544. That section states, in pertinent part, that a trustee can attack any transfer of the debtor's property or any obligation incurred by the debtor that could be voided by:

> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544. Under section 544 the trustee can avoid any conveyance as a hypothetical lien creditor or bona fide purchaser if the conveyance is unperfected when the case begins. *In re Casbeer*, 793 F.2d 1436, 1439 (5th Cir.1986). It is axiomatic that the avoidance power under section 544(a)(3) is governed by the rights that

state law gives to bona fide purchasers. Section 544 does not give the trustee any greater rights than those accorded by state law. *In re Bird Trucking Co., Inc.*, 57 B.R. 208, 212 (Bankr.E.D.Wis.1986); *see also, e.g., In re Louisiana Industrial Coatings, Inc.*, 31 B.R. 688, 692 (Bankr.E.D.La.1983) (section 544's conferral of state law remedies "should go unquestioned"). Thus, the critical issue in the case at bar is whether Louisiana law allows a bona fide purchaser to set aside an encumbrance of community property that one spouse has not approved.

Article 2347 of the Louisiana Civil Code provides that "[t]he concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables...." The effect of a lack of concurrence to the encumbrance of a community immovable is set forth in article 2353, which states that such an encumbrance "is relatively null unless the other spouse has renounced the right to concur...." Both parties have stipulated that the distaff signatures on the collateral mortgage documents were forged, and Mrs. Quirk did not expressly concur in the documents creating the encumbrances on the couple's property. The mortgages are therefore relatively null. *Webb v. Pioneer Bank & Trust Co.*, 530 So.2d 115, 118 (La.Ct.App. 2d Cir.1988).

A relatively null transaction is voidable only by the spouse who did not give consent to the encumbrance, alienation, or lease. It is not, however, voidable by a purchaser or other third party. The Civil Code specifically so provides:

> Relative nullity may be invoked *only* by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative (emphasis supplied).

La.Civ.Code art. 2031. The ineffable Planiol notes that the action to revoke a relative nullity "is not granted to everybody." Instead, Planiol states that revoking a relative nullity:

> is a means of protection available to a particular person. It is thus solely to such person that the action should be-

long. He alone can utterly destroy the effects of the act, in making use of the arm which the law places in his hands. As regards all other persons, the act is as valid, as solid as if it were not tainted with a cause of nullity.

Planiol, Traite Elementaire De Droit Civil, vol. 1, § 343 (L.S.L.I. trans. 1959); *Armour v. Shongaloo Lodge No. 352*, 342 So.2d 600, 603–04 (La.1977) (Summers, J., concurring); *Harris v. Ward*, 224 So.2d 517, 521 (La.Ct. App. 2d Cir.1969); Note, *Contracts—Minor's Contract—An Absolute or a Relative Nullity?*, 38 Tul.L.Rev. 755, 756 (1964). The action to nullify the collateral mortgages belonged solely to Miss Quirk. She has never attempted to render the mortgages a nullity, and has even gone so far as to ratify the encumbrances by an authentic act subsequent to the filing of the bankruptcy petition. The mortgages would bind third party purchasers under Louisiana law; therefore, appellee may not avoid them under section 544 of the Bankruptcy Code.

Appellee asserts that this result frustrates the provisions of the Bankruptcy Act. This court disagrees. Numerous cases have held that if a mortgage would be valid as to bona fide purchasers under state law, the trustee may not avoid it. *E.g., In re Sandy Ridge Oil Co.*, 832 F.2d 75, 76 (7th Cir.1987). Louisiana nullity law does not undermine the dictates of bankruptcy law because the Bankruptcy Code itself makes the trustee's power to avoid transactions contingent on state law. Accordingly, the judgment of the bankruptcy judge is REVERSED. An appropriate judgment will issue.