United States Court of Appeals,

Fifth Circuit.

No. 96-20666.

In the Matter of: Charles HAMILTON, Jr., Debtor.

REALTY PORTFOLIO, INC., Appellant,

v.

Charles HAMILTON, Jr., Appellee.

Oct. 20, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before KING and PARKER, Circuit Judges, and ROSENTHAL[*], District Judge.

ROSENTHAL, District Judge:

A debtor filed a Chapter 13 bankruptcy petition three days after his homestead was sold in a foreclosure sale. When the homeowner filed for bankruptcy protection, the foreclosure purchaser had not filed the substitute trustee's deed. Indeed, the purchaser failed to file and record the deed for another eleven days. The debtor asked the bankruptcy court to avoid the transfer of title to his homestead under 11 U.S.C. §§ 522(h) and 544(a)(3). The bankruptcy court found that the debtor had standing to seek such relief and voided the transfer; the district court affirmed.

This appeal presents the issue of whether a Chapter 13 debtor may avoid a prepetition foreclosure conveyance when the purchaser at the foreclosure sale fails to record the substitute trustee's

---

[*]District Judge of the Southern District of Texas, sitting by designation.

1

deed before the bankruptcy filing.

I. BACKGROUND

The facts are undisputed. On September 2, 1966, Charles Hamilton, Jr. ("Hamilton"), plaintiff-appellee, executed a promissory note payable to First Continental Corporation. The note was secured by a deed of trust executed on the same date and properly recorded in Harris County, Texas. The deed of trust gave Federal National Mortgage Association ("FNMA") a first lien on Hamilton's homestead property, described as Tracts 8A and 8E, Block 3 of Houston Gardens, in Harris County, Texas. FNMA was the owner and holder of the note and deed of trust; Bank United of Texas, FSB ("Bank United") was the servicing agent for FNMA.

In December 1994, Hamilton defaulted on his note payments and Bank United accelerated the indebtedness. On May 2, 1995, on behalf of Bank United, a substitute trustee conducted a nonjudicial foreclosure sale of the property under the deed of trust. Notice of the foreclosure sale was posted in the Harris County, Texas courthouse. The sale was properly conducted under state law. Defendant-appellant Realty Portfolio, Inc. ("Realty Portfolio") purchased the foreclosed property at the sale.

On May 5, 1995, Hamilton filed personal bankruptcy under Chapter 13. On May 16, 1995, Realty Portfolio recorded its substitute trustee's deed in Harris County, Texas. Hamilton filed this adversary proceeding to avoid the transfer to Realty Portfolio and regain title to the property under 11 U.S.C. §§ 522(h) and 544(a)(3).

2

On October 17, 1995, following a bench trial, the bankruptcy court divested Realty Portfolio of title to the property, revested title in Hamilton, and awarded Realty Portfolio a lien on the property in the amount of $3,600, the price Realty Portfolio paid for the property at the foreclosure sale. The district court affirmed the judgment of the bankruptcy court. Realty Portfolio appeals.

## II. THE STANDARD OF REVIEW

This court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo. In re Kemp*, 52 F.3d 546, 550 (5th Cir.1995), *cited in Traina v. Whitney Nat'l Bank,* 109 F.3d 244, 245 (5th Cir.1997).

## III. DISCUSSION

## A. A CHAPTER 13 DEBTOR'S POWERS OF AVOIDANCE

The threshold issue is whether Hamilton, the Chapter 13 debtor, has standing to exercise the avoidance powers of a Chapter 13 trustee under the Bankruptcy Code. Section 544 of the Bankruptcy Code grants Chapter 13 trustees strong-arm powers to avoid certain prepetition property transfers. 11 U.S.C. § 544(a)(3).[1] Section

---

[1]Section 544(a) provides in pertinent part that:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—...

> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of bona fide purchaser at the time of the commencement of the

1303 of the Bankruptcy Code grants Chapter 13 debtors certain powers otherwise reserved to trustees. 11 U.S.C. § 1303.[2] Section 1303 does not include trustees' section 544 strong-arm avoidance powers. There is no specific statutory provision generally authorizing Chapter 13 debtors to exercise trustees' avoidance powers.[3]

A number of bankruptcy courts have found that Chapter 13 debtors may exercise trustees' strong-arm avoidance powers. *See Freeman v. Eli Lilly Fed. Credit Union (In re Freeman),* 72 B.R. 850, 854 (Bankr.E.D.Va.1987); *Ottaviano v. Sorokin & Sorokin (Matter of Ottaviano),* 68 B.R. 238, 240 (Bankr.D.Conn.1986); *Einoder v. Mount Greenwood Bank (In re Einoder),* 55 B.R. 319 (Bankr.N.D.Ill.1985); *In re Boyette,* 33 B.R. 10, 10-11 (Bankr.N.D.Tex.1983); *In re Hall,* 26 B.R. 10, 11 (Bankr.M.D.Fla.1982). In these cases, the courts emphasized the "reality" of Chapter 13 bankruptcies, the limited role of Chapter

---

case, whether or not such a purchaser exists.

    11 U.S.C. § 544(a)(3).

[2]Section 1303 provides that "[s]ubject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f) and 363(*l* ), of this title." 11 U.S.C. § 1303.

[3]The absence of statutory authorization for Chapter 13 debtors contrasts with the express statutory authorization for Chapter 11 debtors. As debtors-in-possession, Chapter 11 debtors have standing to exercise avoidance powers as trustees. 11 U.S.C. § 1107; *see also In re Redditt,* 146 B.R. 693, 695-96 (Bankr.S.D.Miss.1992); *Bruce v. Republicbank-South Austin (In re Bruce),* 96 B.R. 717, 719-20 (Bankr.W.D.Tex.1989); *In re Driver,* 133 B.R. 476, 477 (Bankr.S.D.Ind.1991).

13 trustees, and the perceived unfairness to Chapter 13 debtors of denying them standing under section 544.[4]

---

[4]The bankruptcy courts reaching this result relied heavily on the legislative history of section 1303, including the following floor comment:

> [Section 1303] does not imply that the debtor does not also possess other powers concurrently with the trustee. For example, although Section 323 is not specified in section 1303, certainly it is intended that the debtor has the power to sue and be sued.

124 CONG. REC. H11106 (Sept. 28, 1978)(remarks of Rep. Edwards); S. 17423 (Oct. 6, 1978).

The court in *In re Einoder* summarized the basis of these holdings, as follows:

> I agree with those courts that have extended the trustee's full avoiding powers to Chapter 13 debtors.... [T]he Court should not be blind to the realities of bankruptcy practice. It is clear that the Chapter 13 debtor is the most appropriate party to seek such a recovery. While the trustee, as representative of the estate, usually is the only party to have standing to pursue the avoiding powers granted under the Bankruptcy Code, see 11 U.S.C. §§ 323, 544-553, it is also clear that in Chapter 13 cases the trustee rarely, if ever, pursues such actions because the trustee reaps little benefit for the amount of time and effort involved. The trustee would have to hire an attorney and litigate the action. Should the trustee succeed, any recovery becomes property of the estate and goes to the debtor.... Any other conclusion would be obviously unfair to the debtors. To say the trustee is the representative of the Chapter 13 estate is to raise legal formalism over reality.... [I]t is only reasonable that the bankruptcy court allow the debtor to exercise the avoiding powers for his or her own benefit and for the creditors' indirect benefit as the trustees are unlikely to pursue those matters on their own. The trustees' inactivity in this regard should not result in windfalls to those creditors who have received avoidable transfers from Chapter 13 debtors....
>
> This is true despite the fact that Chapter 13 contains no equivalent provision to § 1107.... The most logical analysis is that the Chapter 13 trustee has some of the trustee's powers, *i.e.* those necessary to carry out the

More recently, bankruptcy courts addressing the issue have receded from their earlier opinions and refused to use section 544 to allow Chapter 13 debtors to exercise strong-arm powers reserved for Chapter 13 trustees. *See In re Redditt,* 146 B.R. 693, 696-701 (Bankr.S.D.Miss.1992); *In re Henderson,* 133 B.R. 813, 816-17 (Bankr.W.D.Tex.1991); *In re Tillery,* 124 B.R. 127 (Bankr.M.D.Fla.1991); *In re Coan,* 134 B.R. 670 (Bankr.M.D.Fla.1991); *In re Driver,* 133 B.R. 476 (Bankr.S.D.Ind.1991); *Bruce v. Republicbank-South Austin (In re Bruce),* 96 B.R. 717, 720-23 (Bankr.W.D.Tex.1989); *In re Mast,* 79 B.R. 981 (Bankr.W.D.Mich.1987). These courts have acknowledged the "realities" of Chapter 13 bankruptcies and the trustees' limited role, the factors emphasized by earlier courts. However, they have also noted the lack of "explicit statutory foundation for the debtor to seek avoidance." *In re Redditt,* 146 B.R. at 701; *In re Bruce,* 96 B.R. at 720-21; *cf. In re Pointer,* 952 F.2d 82, 87-88 (5th Cir.), *cert. denied,* 505 U.S. 1222, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992) (relying on the "plain language of the Code," the court denied standing to a Chapter 11 creditor seeking to

---

trustee's assigned functions under § 15302, while the remaining trustee's powers vest in the Chapter 13 debtor.

> *In re Einoder,* 55 B.R. at 322-24; *see also In re Freeman,* 72 B.R. at 854-55 ("[T]he [Chapter 13 debtors] are the true representatives of the estate and should be given the broad latitude essential to control the progress of their case[;] ... it would be inequitable to refuse the [debtors] the opportunity to increase the value of their estate ... simply because the trustee has failed to take the proper action.").

invoke avoidance powers under section 549 of the Bankruptcy Code).[5]

Under these cases, the debtor, Hamilton, would not have standing through section 1303. However, Congress has specifically authorized narrow exceptions to the general rule that Chapter 13 debtors lack standing to exercise the strong-arm powers of Chapter 13 trustees. In section 522(h), Congress granted debtors the authority to exercise section 544 avoidance powers under specific and limited circumstances.[6]

---

[5]One court explained the change in position as follows:

> As compelling, practical and intensely equitable as these arguments [of the realities of Chapter 13 bankruptcies] might be, they are at bottom well-meaning forays into judicial legislation. They exceed the scope of a bankruptcy judge's role, which is to interpret and apply the statute, not to rewrite it. [internal citations omitted].... By the statute's own terms, only the trustee has standing to exercise the strong-arm avoidance powers.... Legislative history, especially floor comments, may augment but may not amend the statute's straightforward language. Section 1303 simply does not confer standing on the debtor to pursue avoidance actions.... If Congress intended to grant avoidance powers to a Chapter 13 debtor, it could have explicitly done so.

*In re Bruce,* 96 B.R. at 720-21; *see also In re Henderson,* 133 B.R. at 816-17 ("The Bankruptcy Code unambiguously gives avoidance powers to bankruptcy trustees and to Chapter 11 and 12 debtors, but not to Chapter 13 debtors.... Section 1303, by its own terms, does not provide a Chapter 13 debtor with any avoidance powers."); *see also In re Driver,* 133 B.R. at 480 ("Congress knew how to ... give a debtor the duties and powers of a trustee, as it did in Chapter 11," but chose not to do so in Chapter 13).

[6]11 U.S.C. § 522(h) provides that:

> The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

7

Section 522(h) specifically grants debtors standing to avoid certain involuntary transfers of exempt property, such as homesteads, if the trustees have not themselves attempted to avoid the transfers. 11 U.S.C. § 522(h); *see also DeMarah v. United States (In re DeMarah),* 62 F.3d 1248 (9th Cir.1995); *cf. In re Henderson,* 133 B.R. at 817. The Ninth Circuit has identified a five-part test, that generally tracks section 522(h), to determine the power of a debtor to avoid a transfer of exempt property under section 522(h): (1) the transfer was not a voluntary transfer of property by the debtor; (2) the debtor did not conceal the property; (3) the trustee did not attempt to avoid the transfer; (4) the debtor seeks to exercise an avoidance power usually used by the trustee, listed within § 522(h); and (5) the transferred property is of a kind that the debtor would have been able to exempt from the estate if the trustee had avoided the transfer under one of the provisions in § 522(g). *In re DeMarah,* 62 F.3d at 1250. The bankruptcy courts addressing this issue have applied section 522(h) to Chapter 13 debtors. *See In re Elam,* 194 B.R. 412 (Bankr.E.D.Tex.1996) (citing *Young v. Washington Fed. Sav. & Loan Ass'n (In re Young),* 156 B.R. 282 (Bankr.D.Idaho 1993)); *In re Bruce,* 96 B.R. at 721-22; *Willis v. Borg-Warner Acceptance Corp.*

---

> (1) such transfer is avoidable under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
>
> (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h).

8

*(In re Willis),* 48 B.R. 295 (Bankr.S.D.Tex.1985).[7]

In *In re Elam,* the court found that a Chapter 13 debtor had standing under the "narrow exception" of section 522(h) to seek to avoid the prepetition foreclosure of his homestead. 194 B.R. at 415. The court explained that:

> Generally, Chapter 13 debtors may not exercise the statutory avoiding powers, at least not without prior authorization of the Court obtained after notice and a hearing and upon a showing that the Chapter 13 Trustee has neglected or refused to prosecute the action. *In re Young,* 156 B.R. 282, 284 (Bankr.D.Idaho 1993). However, there is a narrow exception to the general rule. Section 522(h) of the Code specifically grants a debtor standing to avoid certain involuntary transfers of exempt property. 11 U.S.C. § 522(h); *In re Young,* 156 B.R. at 284.... The transfer involved here was the foreclosure of Debtor's homestead. This clearly falls within the exception. Therefore, Debtor has standing to bring an avoidance action under section[ ] ... 544.

*In re Elam,* 194 B.R. at 415.

In this case, as in *In re Elam,* the debtor's property was exempt as his homestead; the foreclosure was an involuntary transfer; and the Chapter 13 trustee did not attempt to avoid the transfer. 11 U.S.C. § 522(h). Debtor Hamilton fits the narrow exception under section 522(h) and has standing to seek avoidance of his homestead's foreclosure sale under section 544(a)(3) of the Bankruptcy Code.

---

[7]As one court has noted, to recognize that " § 522 applies in its entirety in Chapter 13 cases and that the Chapter 13 debtor has the full panoply of rights thereunder .... accords with the legislative intent both to encourage individual debtors to use Chapter 13 rather than Chapter 7 and to afford a debtor a reasonable chance for a fresh start in Chapter 13. A more generous exemption policy in Chapter 7 as compared with Chapter 13 would frustrate the congressional policy of encouraging consumer debtors to use Chapter 13 in preference to Chapter 7." *In re Einoder,* 55 B.R. at 324 n. 17 (citations omitted).

B. CONSTRUCTIVE AND INQUIRY NOTICE:  THE BONA FIDE PURCHASER

Section 544(a) provides in pertinent part that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—...

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).  Section 544(a)(3) allows the avoidance of a transfer of real property that is not perfected and enforceable against a bona fide purchaser at the time the bankruptcy petition is filed.  *In re Elam,* 194 B.R. at 416;  *In re Young,* 156 B.R. at 285.[8]

While the Bankruptcy Code creates the status of a hypothetical bona fide purchaser, state law defines that status. *Mutual Benefit Life Ins. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.),* 876 F.2d 34, 36 (5th Cir.1989);  *In re Elam,* 194 B.R. at 416.  Under Texas law, a "bona fide purchaser is one who acquires (apparent) legal title to property in good faith for a valuable

_____

[8]One court has found that the Chapter 13 debtor cannot exercise the section 544(a)(3) powers of the Chapter 13 trustee because "[a]t the moment a foreclosure sale concludes, the debtor is fully divested of all legal and equitable interest in the foreclosed property."  *In re Applewhite,* 106 B.R. 468, 469 (Bankr.S.D.Miss.1989).  By its own terms, section 544(a)(3) allows a party to avoid a foreclosure sale, and therefore to avoid the transfer that divested debtor of title to the foreclosed property, revesting title in the debtor.  11 U.S.C. § 544(a)(3);  *see also In re Elam,* 194 B.R. at 415;  *see generally Gaudet v. Babin (Matter of Zedda),* 103 F.3d 1195, 1200-01 (5th Cir.1997).

consideration without ... notice of an infirmity in the title."
*Williams v. Jennings,* 755 S.W.2d 874, 881 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *see also Strong v. Strong,* 128 Tex. 470, 98 S.W.2d 346, 347 (1936). A conveyance of an interest in real property, including a deed of trust, is void as to a subsequent purchaser if the interest was not recorded at the time of the subsequent purchase and the purchaser paid valuable consideration without notice of the unrecorded interest. *See* TEX. PROP.CODE ANN. § 13.001(a).[9]

Under Texas law, a hypothetical purchaser would gain good title to Hamilton's property after it was sold at a valid foreclosure sale but before the substitute trustee's deed was recorded, unless the purchaser had notice of the foreclosure purchase. *See* TEX. PROP.CODE ANN. § 13.001(a). Under section 544, the actual knowledge of the trustee is not relevant. 11 U.S.C. § 544(a). The issue is therefore whether a hypothetical purchaser would be charged with implied knowledge of the foreclosure purchase, by constructive or inquiry notice.

1. Constructive Notice

Under Texas law, constructive notice is notice given by

---

[9]Section 13.001 of the Texas Property Code provides in pertinent part that:

> A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

TEX. PROP.CODE ANN. § 13.001(a).

11

properly recorded instruments and charged to a person as a matter of law, regardless of the person's actual knowledge. *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex.1981); TEX. PROP.CODE ANN. § 13.002. The deed of trust to the Hamilton property was properly recorded in Harris County, Texas, in 1966. "An instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument." TEX. PROP.CODE ANN. § 13.002. As a matter of law, a hypothetical purchaser of the Hamilton property had constructive notice of the deed of trust and would purchase the property subject to the deed of trust. *See Inwood North Homeowners' Ass'n v. Harris,* 736 S.W.2d 632, 635 (Tex.1987); *Seals v. First Nat'l Bank (In re Church & Institutional Facilities Dev. Corp.),* 122 B.R. 958 (Bankr.N.D.Tex.1991); *cf. Smith v. Morris & Co.,* 694 S.W.2d 37 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) ("[W]here a deed of trust was on record, a purchaser of land is chargeable with notice of the deed of trust and takes title subject to the rights of the mortgagee under the deed of trust.").

The substitute trustee's deed to Realty Portfolio was not recorded by the date of the bankruptcy petition filing. On the date of the bankruptcy petition, a hypothetical purchaser could not be charged with constructive notice of the substitute trustee's deed, as a matter of law. TEX. PROP.CODE ANN. §§ 13.001, 13.002; *see also In re Elam,* 194 B.R. at 415-16; *cf. McEvoy v. Watkins,* 105 B.R. 362, 365 (Bankr.N.D.Tex.1987).

Realty Portfolio argues that constructive notice of the deed of trust would trigger a duty of inquiry that would place a

12

hypothetical purchaser on inquiry notice of the foreclosure purchase. The first issue is whether the deed of trust placed the hypothetical purchaser on inquiry notice. If so, the second issue is whether the hypothetical purchaser is chargeable with inquiry notice of the foreclosure purchase.

2. Inquiry Notice

Texas law recognizes the doctrine of inquiry notice, triggered by notice of facts that would put a reasonably prudent person on a duty of inquiry. *See Woodward v. Ortiz,* 150 Tex. 75, 237 S.W.2d 286, 289 (1951); *Prewitt v. United States,* 792 F.2d 1353, 1358-59 (5th Cir.1986); *Teofan v. Cools (In re Spring Creek Invs.),* 71 B.R. 157, 159-60 (Bankr.N.D.Tex.1987); *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.,* 651 S.W.2d 284 (Tex.App.—Austin 1983, writ ref'd n.r.e.). Under Texas law, constructive notice of a recorded deed of trust in the chain of title puts a subsequent purchaser under a duty to make a reasonable inquiry into the status of the deed of trust. *See Lumpkin v. Adams,* 74 Tex. 96, 11 S.W. 1070, 1073 (1889); *accord Olsen v. Bank One (In re Bruder),* 207 B.R. 151, 159 (N.D.Ill.1997).

The bankruptcy and district courts in this case reasoned that although state law determines whether a hypothetical purchaser is a bona fide purchaser without notice for the purpose of section 544(a), bankruptcy law precludes the application of inquiry notice because inquiry notice refers to actual knowledge. Under Texas law, however, inquiry notice is a form of implied knowledge; it is not actual, personal knowledge of the type made irrelevant under

13

section 544(a).  *See Woodward,* 237 S.W.2d at 289 ("[T]hose things which a[n] ... inquiry ... *would have* discovered.") (emphasis added);  *cf.  Exxon Corp. v. Raetzer,* 533 S.W.2d 842, 846 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.) ("implied notice").  A hypothetical purchaser on inquiry notice is chargeable with implied knowledge of facts that would be discovered by a reasonably diligent inquiry.  To find inquiry notice inapplicable to a hypothetical purchaser or trustee under section 544(a) would place the hypothetical purchaser or trustee in a better position than other purchasers under state law.  Section 544(a)(3) does not give Chapter 13 trustees any greater rights than bona fide purchasers have under state law.  *Maine Nat'l Bank v. Morse (In re Morse),* 30 B.R. 52, 54 (1st Cir.BAP1983);  *Calcasieu v. Marine Nat'l Bank (In re Quirk),* 119 B.R. 99, 100 (W.D.La.1990).

A hypothetical purchaser of Hamilton's property on the date of the bankruptcy filing would be on inquiry notice resulting from constructive notice of the recorded deed of trust and the information contained therein.  "[A] purchaser is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims....  The rationale of the rule is that any description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to

14

and affecting the estate is obtained." *Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 908 (Tex.1982) (citations omitted); *see also In re Spring Creek Invs.,* 71 B.R. at 159-60; FRED A. LANGE & ALOYSIUS A. LEOPOLD, LAND TITLES AND TITLE EXAMINATION § 886 (West 1992) ("[A] purchaser of land is not only put upon notice of the contents of a prior recorded deed, but of any fact contained therein which would put a reasonable man upon inquiry, so that while a recorded deed is constructive notice only of the facts which it recites, yet a party is chargeable with notice of what a reasonably prudent person, with knowledge of the facts, would have ascertained by inquiry[;] ... a purchaser of land must search records since they are the primary source of information as to the title and he is charged with knowledge of the existence and contents of recorded instruments affecting title, and a purchaser is charged with notice of the contents and legal effect of instruments which are in his chain of title although he may never have had any actual knowledge thereof.").

The duty of inquiry is governed by standards of reasonableness, extending to "those things which a reasonably diligent inquiry and exercise of the means of information at hand would have discovered." *Woodward,* 237 S.W.2d at 289; *see also Prewitt,* 792 F.2d at 1359 ("a *reasonably diligent* inquiry and exercise of the *means of information at hand* ") (emphasis added); *In re Spring Creek Invs.,* 71 B.R. at 160 ("the duty does not extend to exhaustive inquiry or investigation of speculation and conjecture"); *Westland,* 637 S.W.2d at 908 ("*diligent* inquiry and

15

search") (emphasis added); *Flack v. First Nat'l Bank,* 148 Tex. 495, 226 S.W.2d 628, 631 (1950); *Hobbs v. Hutson,* 733 S.W.2d 269, 272 (Tex.App.—Texarkana 1987, writ denied) (citing *Miles v. Martin,* 159 Tex. 336, 321 S.W.2d 62 (1959)); *cf. Briggs v. Kent (In re Professional Inv. Props.),* 955 F.2d 623, 627 (9th Cir.1992), *cert. denied, Miller v. Briggs,* 506 U.S. 818, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992) ("[W]here a purchaser has knowledge of information of facts which are sufficient to put an *ordinarily prudent* man upon inquiry, and the inquiry, if followed with *reasonable diligence,* would lead to the discovery of defects in the title ... the purchaser will be held chargeable with knowledge thereof.") (emphasis added).

Courts have found that a purchaser's reasonably diligent inquiry, through information at hand, can lead to a purchaser's implied knowledge of a foreclosure sale under a recorded deed of trust, even in the absence of a recorded substitute trustee's deed. *See Clarkson v. Ruiz,* 140 S.W.2d 206, 210 (Tex.Civ.App.—San Antonio 1940, writ dism'd) (purchasers on notice of an unreleased deed of trust "would have [been] put upon inquiry, which, if diligently pursued, would have in all probability, [led] to a discovery of the foreclosure under the power of the deed of trust"); *see also Chavis v. Gibbs,* 198 Va. 379, 94 S.E.2d 195, 201 (1956) ("[I]f reasonable and prudent inquiry had been made and full answers obtained, [the purchaser] would have discovered that because of default in the payment of the notes, the property had been sold in accordance with the provisions of the deed of trust."); *cf.*

16

*Parker v. Wear,* 230 S.W. 75, 78 (Mo.1921) ("[I]t was immaterial that the purchaser at the foreclosure had not then filed his deed from the trustee, where not only was the deed of trust on record, but [the purchaser's] deed itself recited the outstanding incumbrance, as these facts put plaintiff on inquiry which, if it had been followed, would have disclosed that her grantor at that time had no title."). The determination of whether a purchaser may be charged with such knowledge depends on the facts of each case. *See Miles,* 321 S.W.2d at 69 ("[W]hether a diligent search would have led to a discovery of the [facts is an] issue[ ] to be determined by the trier of fact under all the evidence."), *quoted in Hobbs,* 733 S.W.2d at 272.

A reasonably prudent hypothetical purchaser of the Hamilton property, on constructive notice of the deed of trust, two days after the foreclosure sale but before the substitute trustee's deed was recorded, would have made a reasonable inquiry into whether the deed of trust had been released, extended, renewed, or foreclosed, using information at hand. *See Lumpkin,* 11 S.W. at 1073 (if the purchaser had notice of the mortgage "at the time of his purchase, he would be put on inquiry, and would be required to exercise reasonable diligence to ascertain the facts constituting any change in or renewal of the mortgage, reasonable diligence to inform himself if the mortgage had been satisfied, and, if satisfied, how it had been satisfied"). Inquiring into the real property records of the chain of title, the hypothetical purchaser would have found no record that the deed of trust had been extinguished. A

17

hypothetical purchaser, acquiring the property subject to an unreleased deed of trust, would inquire further into the status of the lien, exercising other available means of information readily at hand.[10]

The deed of trust, properly filed and recorded, and within the hypothetical purchaser's constructive knowledge, revealed that FNMA was the holder of the deed of trust and Bank United its servicing agent. The records showed no transfer of ownership of the deed of trust. A hypothetical reasonably diligent purchaser would have inquired of FNMA or Bank United as to the status of the deed of trust.[11] The record does not disclose whether such an inquiry would

---

[10]Before the foreclosure sale, notice of the pending sale was posted in the Harris County, Texas courthouse. TEX. PROP.CODE ANN. § 51.002(b); *cf In re Burns*, 183 B.R. 670, 671 (Bankr.D.R.I.1995). After the foreclosure sale, no posted or filed records were required. *See* TEX. PROP.CODE ANN. § 51.002(f) ("[T]he clerk may dispose of the notices after the date of sale specified in the notice has passed."). There is no indication that the foreclosure notice was a means of information at hand after the foreclosure sale occurred in this case.

[11]Knowledgeable persons may be sources of information at hand. *See Dodd v. First State Bank & Trust Co.*, 64 S.W.2d 1021, 1023 (Tex.Civ.App.—Amarillo 1933, no writ) ("[I]n order to become a bona fide purchaser or a bona fide mortgagee of real property when the party has notice that prior liens and incumbrances are outstanding, it is necessary that such party should inquire of reliable and disinterested persons as to the status, the ownership, and validity of the notes or bonds evidencing such prior indebtedness.... [A]ll ... reasonable and available sources of information must be exhausted.") (citations omitted); *see also Lumpkin*, 11 S.W. at 1073 (had the purchaser inquired, "the facts could have been easily ascertained, as [a former owner] was alive"); *Allen v. Green*, 229 Va. 588, 331 S.E.2d 472, 474-76 (1985) (purchasers inquiring into a deed reservation in their chain of title "had a duty to inquire as to sources of information reasonably disclosed by matters of record. At the time of their purchase ..., [the original grantor] was still alive and residing on the property conveyed.... By their own testimony, they chose to ignore those readily available sources of information whose knowledge was made obvious by the recorded

18

have led to the discovery of facts sufficient to charge the hypothetical purchaser with inquiry notice of the foreclosure sale and substitute trustee's deed.

Under Texas law, constructive notice of a recorded deed of trust does not trigger a duty to monitor litigation announcements and all other sources potentially containing information about real property to learn of any unrecorded extensions, renewals, releases, or foreclosure sales. Such a duty of investigation would be more exhaustive and burdensome than the duty of "reasonable and diligent inquiry" required under Texas law. *See In re Spring Creek Invs.,* 71 B.R. at 159-60 ("[T]he duty does not extend to exhaustive inquiry or investigation."). A hypothetical purchaser is only under a duty of reasonable inquiry, by exercise of the means of

---

deeds. Means of knowledge, with the duty of using them, are equivalent to knowledge itself"); *cf. Hopper v. Tancil,* 3 S.W.2d 67 (Tex.Com.App.1928) (once suspicions were raised by a letter, the purchaser should have inquired into the property by contacting the letter writer "or anyone else," replying to the letter, or examining the district court records); *In re Professional Inv. Props.,* 955 F.2d at 629 (the bankruptcy petition "indicated the very people who instigated the bankruptcy proceedings had a deed of trust[; t]his petition should have raised the trustee's suspicions and compelled him to inquire further[;] ... the trustee need only have contacted [the party that filed the petition] to determine their specific interest"); *Massachusetts Bonding & Ins. Co. v. Knox,* 220 N.C. 725, 18 S.E.2d 436, 440 (1942) ("[O]ne who purchases premises covered by an undischarged mortgage cannot claim to be a purchaser without notice of the equities of the mortgagee ... and inquiry of the mortgagee would have elicited information that the mortgage was still in force as between the original parties.") (citations omitted); *Nichol v. Howard,* 112 Md.App. 163, 684 A.2d 861, 866, 863 (1996) (if an address does not appear in the records, inquiry into a correct address for the purpose of issuing a mortgagee's notice could have included asking the "the tenants where they mailed the rent," or asking the mortgagees "where they mailed payment notices, premium books, escrow accounts and other correspondence").

information at hand, including a search of the real property records in the chain of title, and if the deed of trust remained unsatisfied, to inquire of the mortgage company identified in the recorded deed of trust.  If such an inquiry would not disclose the foreclosure sale and substitute trustee's deed, then the hypothetical purchaser could rely on the absence of any record of the substitute trustee's deed in the chain of title and acquire the Hamilton property without notice of the foreclosure sale.

The bankruptcy and district courts in this case reasoned that to require a bankruptcy court to make a determination as to inquiry notice would impose an "onerous burden" on the court to make a factual determination based on "hypothetical facts" or the actual knowledge of the trustee.  A determination of whether a reasonable inquiry into the status of the recorded deed of trust would lead to knowledge of the foreclosure sale depends on the actual facts of the case, the actual documents in the real property records, the sources of information fairly suggested by those records, and the means of information actually at hand, such as the identity of the mortgage company.  The determination depends neither on the actual knowledge of the trustee nor on hypothetical facts.

The court notes that had Realty Portfolio not delayed in recording its substitute trustee's deed, the problem in this case would not have arisen.  A purchaser of real property at a foreclosure sale has the ability to protect the newly-acquired property interest by promptly recording the deed. *Cf. Little v. Duncombe (In re Duncombe),* 143 B.R. 243, 246-47

(Bankr.C.D.Cal.1992) (a "foreclosing secured creditor can ... deliver a deed immediately upon the completion of the sale[; a] purchaser ... can ... record the deed immediately").

IV. CONCLUSION

For the foregoing reasons, we REVERSE and REMAND to the bankruptcy court for a determination of whether, based on the narrow facts of this case, a reasonably diligent inquiry into the recorded deed of trust in the purchaser's chain of title and exercise of the means of information at hand on the date of the bankruptcy filing would have disclosed facts sufficient to place a hypothetical purchaser of the Hamilton property on notice of the foreclosure sale and substitute trustee's deed.[12]

_____

[12]The bankruptcy court may ultimately take into account principles of equity and fairness in its determination of whether to allow the exercise of the strong-arm powers of avoidance. *See Momentum Mfg. Corp. v. Employees Creditors Comm. (In re Momentum Mfg. Corp.),* 25 F.3d 1132, 1136 (2d Cir.1994) ("[I]t is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."); *cf. Butner v. United States,* 440 U.S. 48, 55-56, 99 S.Ct. 914, 918-19, 59 L.Ed.2d 136 (1979) ("[T]he equity powers of the bankruptcy court play an important part in the administration of bankrupt estates in countless situations in which the judge is required to deal with particular, individualized problems."). The facts in the record support the conclusion that avoidance of the foreclosure would be equitable. Debtor Hamilton paid Bank United in March 1995 in an attempt to cure the default and relied on a statement of a Department of Veterans Affairs employee that the March payment had cured the default. The bankruptcy court valued Hamilton's homestead at $40,000; Realty Portfolio purchased the property for $3,600. However, these equitable considerations do not substitute for, or inform, the threshold analysis of whether a hypothetical bona fide purchaser "without notice" exists under the facts of the case. *See United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986) (section 105 of the Bankruptcy Code, granting bankruptcy courts supplemental equitable powers, "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity").

The bankruptcy court must first resolve the issue of inquiry notice.