**In re Thomas TILTON and Cynthia Tilton, Debtors.**

**Mark A. Weisbart, Chapter 7 Trustee, Plaintiff,**

**v.**

**Sanger Bank and Pilot Point Livestock Auction, Ltd., Defendants.**

**Pilot Point Livestock Auction, Ltd., Cross Plaintiff/Counter Plaintiff,**

**v.**

**Sanger Bank, Cross Defendant.**

Bankruptcy No. 01–42206–S.
Adversary No. 02–1050.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

June 30, 2003.

**480**

Robert R. Coble, Gainesville, TX, for Debtor.

Mark A. Weisbart, Kessler & Collins, PC, Dallas, TX, Chapter 7 Trustee.

Miller Davidge, Hilton & Davidge, PC, Denton, TX, for Sanger Bank.

*MEMORANDUM OPINION*

DONALD R. SHARP, Chief Judge.

Now before the Court for consideration is the Motion by Mark A. Weisbart, the duly–appointed Chapter 7 Trustee and Plaintiff herein For Summary Judgment against Defendant Sanger Bank. The Court considered the pleadings filed, any attachments and the record in this case. This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

*FACTUAL AND PROCEDURAL BACKGROUND*

Debtors Thomas J. Tilton and Cynthia H. Tilton (the "Debtors") filed for relief under Chapter 7 of Title 11 of the United States Code on June 7, 2001. Mark A. Weisbart was appointed Chapter 7 Trustee (the "Trustee"). The Debtors listed approximately 36 acres of land located in Pilot Point, Denton County, Texas ("Property") on their Schedule "A" of the Statement of Financial Affairs and Schedules of Assets and Liabilities filed in the underlying bankruptcy case. Sanger Bank, the Defendant in this Adversary Proceeding filed a proof of claim ("Claim No. 5") asserting a secured claim in the amount of $478,100 secured by the Property. Claim No. 5 is supported by copies of the Promissory Note and Deed of Trust described with particularity hereinbelow.

The Trustee filed his Complaint To Avoid Lien and for Declaratory Relief and Objection To Claim against Sanger Bank. Sanger Bank responded and the matter

was set for trial. The Trustee amended the Complaint to add claims against Pilot Point Livestock Auction LTD ("Pilot Point"); Pilot Point answered and filed counterclaims (thereafter amended)[1] against the Trustee and a crossaction against Sanger Bank, which in turn filed its own cross and counterclaims. Ultimately, the Trustee filed a Second Amended Complaint and Sanger Bank filed an Answer to same. Shortly after the Second Amended Complaint and Answer were filed, the Trustee filed the instant Motion for Summary Judgment ("Motion") together with supporting affidavits. Sanger Bank responded and filed a cross Motion For Summary Judgment to which the Trustee replied. Sanger Bank's Response to the Trustee's Motion For Summary Judgment adopts the Trustee's Summary Judgment Exhibits including the Debtors' respective individual affidavits and the Affidavit of Charles Feoglio, President of Sanger Bank authenticating the Note, Deed of Trust and Modification and testifying that Sanger Bank never released the lien evidenced by same. The Fenoglio Affidavit recites that the outstanding principal balance is $350,000.00 and the outstanding interest is $174,369.40 as of May 19, 2003, the date of the affidavit (rather than as of the date of the filing of the petition). Both Motions were set for hearing. At the hearing on the Trustee's Motion the Court ruled in favor of the Trustee orally. The following are the Court's findings of fact and conclusions of law underlying the ruling. Sanger Bank's Cross Motion for Summary Judgment is currently pending.

## DISCUSSION

Summary Judgment is appropriate in bankruptcy proceedings when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *In re McCafferty, 96 F.3d 192.* The burden of establishing the non-existence of a "genuine issue" is on the party moving for Summary Judgment. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). One cannot rest on the mere allegations of the pleadings. In *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court held that (1) only disputes over facts that might legitimately effect the outcome are material under Rule 56; (2) the test for determining whether a genuine issue of material fact exists is whether a reasonable fact finder could find in favor of the non-moving party upon the evidence presented; and (3) in applying the test the court must view the evidence in the light most favorable to the non-movant and assess its sufficiency according to the evidentiary burden imposed by the controlling substantive law. Once the Movant has properly supported the Motion with competent summary judgment evidence Rule 56(e) requires the opposing party to "set forth specific facts" that demonstrate the existence of a genuine issue for trial.

Local Rule of Bankruptcy Procedure 7056 "Summary Judgments" states that Local District Rule CV–56 applies in adversary proceedings. Rule CV–56 provides:

Summary Judgment Procedure.

(a) Any party moving for summary judgment should identify both the legal and factual basis for its motion. The text of the motion or an appendix thereto must include a "Statement of Material Facts." If the movant relies upon evidence to support its motion, the motion should include appropriate citations to proper summary judgment evidence as to which

---

1. Trustee successfully moved to dismiss one of Pilot Point's counterclaims.

the moving party contends there is no genuine issue of material fact for trial. Proper summary judgment evidence should be attached to the motion in accordance with section (d) of this rule.

(b) Any party opposing the motion should serve and file a response that includes in the text of the response or as an appendix thereto, a "Statement of Genuine Issues." The response should be supported by appropriate citations to proper summary judgment evidence as to which it is contended that a genuine issue of material fact exists. Proper summary judgment evidence should be attached to the response in accordance with the procedure contained in section (d) of this rule.

(c) In resolving the motion for summary judgment, the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by proper summary judgment evidence. The Court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment.

(d) As used within this rule, "proper summary judgment evidence" means excerpted copies of pleadings, depositions, answers to interrogatories, admissions, affidavits, and other admissible evidence cited in the motion for summary judgment or the response thereto. The phrase "appropriate citations" means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line. Any attached evidentiary materials should have the cited portions highlighted in the copy provided to the Court, unless the citation encompasses the entire page. The page preceding and following a highlighted page may be submitted if necessary to place the highlighted material in its proper context. Only relevant, cited-to excerpts of evidentiary materials should be attached to the motion or the response.

Local District Rule CV–56.

The Trustee's Second Amended Complaint is extensive. Sanger Bank, in its pleadings of record, admits the following facts:

(i) on or about January 6, 1994, the Debtors signed a promissory note made payable to Sanger Bank in the amount of $350,000 (the "Note") with interest accruing at 8.750% annually and a maturity date of January 6, 1997;

(ii) on or about January 6, 1994, the Debtors executed a Deed of Trust in favor of Sanger Bank to secure the Note; that it pledged 65 acres of Property in Pilot Point and that it was properly recorded in the deed records of Denton County on February 1, 1994; and that

(iii) both Debtors executed a certain Modification and Extension of Note and Lien on December 21, 1994 pertaining to the aforementioned Note and Deed of Trust and recorded same in Deed Records for Denton County on January 6, 1995 [2].

2. The Modification, attached as Exhibit C to the Complaint, on its face purports "to extend or rearrange the time or manner of payment of said note and to extend and carry forward the liens on said property"... and provides for a different rate of interest. Specifically the Modification sets forth (in pertinent part) that the Debtors "promise[s] to pay to the order of Sanger Bank all amounts owing on said note, including both principal and interest, as fol-

Sanger Bank advises that an Addendum to FSA OL Line of Credit Note dated March 23, 1998 was executed by and between Sanger Bank and the Debtors.[3] The Addendum to FSA OL Line of Credit Note dated March 23, 1998 was never recorded in deed records. *(Sanger Bank's Response to the Motion For Summary Judgment, ¶ 17 and Sanger Bank's Answer To 2nd Amended Complaint ¶ 15.)*

The basis upon which the Trustee seeks summary judgment is that Sanger Bank could not enforce its lien debt evidenced by the Deed of Trust, Note and Modification under applicable Texas law against either a hypothetical holder of a judicial lien or a bona fide purchaser. Consequently, the Trustee believes the Court may declare the lien avoidable under 11 U.S.C. §§ 544(a)(1) and/or 544(a)(3).

▬ The Trustee is correct. The Trustee acquired the power to avoid the lien under § 544(a)(1) of the Bankruptcy Code as a judicial lien creditor and also under sub-section (a)(3) as a bona fide purchaser as of the commencement of the case. The Deed of Trust, as the Trustee opines, became void and ceased to exist by operation of Texas law as of the petition date. Sanger Bank has failed to demonstrate to this Court that it brought suit for recovery or sought to foreclose its lien on the Property within four years of the lien debt's maturity on December 21, 1995 or that it extended its lien in accordance with applicable Texas State Law. December 21, 1995 is the maturity date based upon the recorded modification recorded in Deed Records. The four year statute of limitations arises under Tex. Civ.Prac. & Rem. Code Sections 16.035(a) and 16.035(e) (more specifically where a Note has been modified or extended). The limitations period runs from the maturity date of the Note. *Texas Civil Practices and Remedies Code § 16.035(e).* See also *The Cadle Company v. Butler,* 951 S.W.2d 901, 909 (Tex.App.-Corpus Christi, 1997) [where no extension or renewal agreement is recorded and lien debt appears four years past due, such agreement is void against such person].

Sanger Bank takes the position that the Note did not mature on December 21, 1995 as a result of suspension created by the Addendum to FSA OL Line of Credit Guarantee. Sanger Bank opines that as a result of the Addendum, the December 21, 1995 maturity date on the face of the Modification was extended to March 23, 2005. Notwithstanding that Sanger admits it never recorded the Addendum, Sanger believes that the Trustee should be and is bound by it because he had a duty of "reasonable inquiry". Sanger Bank avers that the Debtors' Schedules filed in this case placed the Trustee on "inquiry notice". Sanger Bank relies upon *Realty Portfolio, Inc. v. Hamilton (Matter of Hamilton),* 125 F.3d 292 (5th Cir.1997) for this proposition.

The *Hamilton* case is distinguishable on its facts from the instant case. Charles Hamilton, as Chapter 13 *Debtor,* was attempting to exercise the avoidance powers

---

lows: The principal amount owing on said indebtedness as of this date is ONE HUNDRED FORTY–SIX THOUSAND SIX HUNDRED FORTY–SIX AND 58/100 ($146,-646.58) DOLLARS. The annual interest rate on unpaid principal from this date is 11.5% per annum. Both principal and interest are due and payable on or before December 21, 1995." Then, the Modification language reit-erates in the next subsequent paragraph in all capitalized letters a notice to the borrower that "this loan is payable in full on December 21, 1995."

3. The Addendum was introduced into the Court's record as Exhibit "D" to the Affidavit of Cynthia H. Tilton filed of record May 1, 2003.

of the Chapter 13 *Trustee* under the Bankruptcy Code as to real property acquired by Realty Portfolio at a pre-petition sale properly conducted under state law. After the foreclosure but prior to the recordation of the substitute trustee's deed the debtor filed his voluntary petition in bankruptcy. Thus, the bankruptcy estate acquired the real property under the infirmity of an unrecorded sale. The Fifth Circuit Court in *Hamilton* explained:

> While the Bankruptcy Code creates the status of a hypothetical bona fide purchaser, state law defines that status. *Mutual Benefit Life Ins. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.),* 876 F.2d 34, 36 (5th Cir.1989); *In re Elam,* 194 B.R. at 416. Under Texas law, a "bona fide purchaser is one who acquires (apparent) legal title to property in good faith for a valuable consideration without ... notice of an infirmity in the title." *Williams v. Jennings,* 755 S.W.2d 874, 881 (Tex.App.-Houston [14th Dist.] 1988, writ denied); *see also Strong v. Strong,* 128 Tex. 470, 98 S.W.2d 346, 347 (1936). A conveyance of an interest in real property, including a deed of trust, is void as to a subsequent purchaser if the interest was not recorded at the time of the subsequent purchase and the purchaser paid valuable consideration without notice of the unrecorded interest. *See Tex. Prop.Code Ann. § 13.001(a).*

*Matter of Hamilton,* 125 F.3d 292, 298–299.

Ultimately, the Hamilton Court remanded the matter to the bankruptcy court to determine whether the result would have been different if Hamilton had discharged his duty to make a reasonable inquiry into the status of the recorded deed of trust.

■ Given the foregoing definition of a bona fide purchaser for value, Sanger Bank relies upon the *Hamilton* case to argue that the Trustee in bankruptcy, cast by the Bankruptcy Code as a hypothetical bona fide purchaser here, should be charged with implied knowledge of the addendum by inquiry notice thus *defeating his status as a bona fide purchaser in good faith.* (In both the Hamilton case and in the case at bar-constructive notice was not a factor.) The Trustee argues that a trustee's knowledge is immaterial under the Code. The *Hamilton* Court acknowledges that Texas law recognizes the doctrine of inquiry notice, triggered by notice of facts that would put a reasonably prudent person on notice that he had a duty of inquiry. *Matter of Hamilton,* 125 F.3d 292 at 299 *citing to Woodward v. Ortiz,* 150 Tex. 75, 237 S.W.2d 286, 289 (1951); *Prewitt v. United States,* 792 F.2d 1353, 1358–59 (5th Cir.1986); *Teofan v. Cools (In re Spring Creek Invs.),* 71 B.R. 157, 159–60 (Bankr.N.D.Tex.1987); *T-Vestco Litt Vada v. Lu Cal One Oil Co.,* 651 S.W.2d 284 (Tex.App.-Austin 1983, writ ref'd n.r.e.). However, the *Hamilton* Court suggests that "whether a purchaser may be charged with such knowledge depends on the facts of each case". *Ibid* at p. 302 *citing to Miles v. Martin,* 159 Tex. 336, 321 S.W.2d 62, 69 (1959). Thus, the *Hamilton* ruling does not save Sanger Bank from the result of its failure to record its lien, if any, created through the Addendum or consensually with the Debtors.[4] The distinction between this case and the *Hamilton* case which mandates a

---

4. Sanger argues under Section 13.001(b) of the Texas Property Code that an unrecorded lien is valid as between the parties and cites to the case of *Yates v. Darby,* 133 Tex. 593, 131 S.W.2d 95 (Com.App.1939) for the same proposition. While that is certainly a correct principle of law it is not meaningful in this case because the Trustee is not a successor to the Debtor but is a third party to the transaction. The *Yates* decision recognizes that fact as to third parties in cases where extensions are unrecorded.

different result is that in *Hamilton* the recorded instrument showed a deed of trust that had never been released and was not matured. Therefore, any reasonably prudent person would be placed on notice that he should make reasonable inquiry as to the status of the security interest created by that recorded document. In the instant case the recorded document affirmatively showed that it had matured on March 21, 1995. The absence of any document extending that maturity date or the absences of any action to enforce the security interest within the statutory period of four years created by Texas law was not ambiguous. If one could rely on the face of the recorded documents and the statutory limitations provided by Texas law that security interest was at an end. To hold that such a set of circumstances created a duty of further inquiry would create uncertainty as to every recorded document in the public records. Such is not the reason for public recordation laws or statutes of limitation.

 In this case, the Court finds that the Trustee acquired the property as of the commencement of the case or June 7, 2001. 11 U.S.C. §§ 541 and 544. The Trustee was appointed June 15, 2001. The Debtor's Schedules were filed July 26, 2001. It is illogical and unreasonable to charge the Trustee with knowledge of a lien as a result of the filing of the Debtors' Schedules. Assuming, *arguendo*, as Sanger Bank suggests, the Debtors' Schedule D listing the property as secured by Sanger Bank, put the Trustee on notice of the lien, the Schedules of the Debtors merely put the Trustee on notice to investigate the county deed records and determine whether there were properly recorded documents creating an unexpired lien or ex-

tending the prior lien. He did so and there were none. The Trustee's investigation revealed that there were not properly recorded documents extending the expired lien of Sanger Bank. *Tex.Civ. Prac. & Rem.Code § 16.036(b)(2) and (d)*. A debtor's Schedules filed pursuant to 11 U.S.C. § 521 cannot create a valid lien under State Law, resurrect an expired lien or correct an improperly perfected one. If "constructive notice of a recorded deed does not trigger a duty to monitor litigation announcements and all other sources potentially containing information about real property to learn of any unrecorded extensions, renewals, releases, or foreclosure sales"[5], neither does the duty of inquiry notice "extend to exhaustive inquiry or investigation of speculation and conjecture." *In re Spring Creek Investments of Dallas, N.V., Inc.*, 71 B.R. 157, 160 citing to *Edwards v. Brown*, 68 Tex. 329, 4 S.W. 380 (1887). Rather, "A hypothetical purchaser on inquiry notice is chargeable with implied knowledge of facts that would be discovered by a reasonably diligent inquiry." *Hamilton, Ibid* at 300. Sanger Bank's unique reading of *Hamilton* simply renders the recording requirements of the Texas Property Code superfluous. Moreover, it renders the statute of limitations meaningless. Accordingly, at best a debtor's schedules might put a trustee on inquiry notice to investigate the County's deed records to determine the status on the date of filing of recorded liens against the real property that had become property of the estate under 11 U.S.C. § 541 upon the commencement of the bankruptcy case. The Debtors' schedules do not shield Sanger Bank from its failure to enforce its pre-petition rights.[6] Schedule

5. *Hamilton, supra,* at 301.

6. As the Trustee points out, citing to the Tilton Affidavit uncontroverted by Sanger Bank:

"Prior to the petition date, Sanger Bank took no action to enforce the Deed of Trust or

"D" containing the Debtors' opinion as to the secured status of the property, an opinion subject to attack, cannot and does not rescue Sanger Bank from its failure to file, perfect or otherwise comply with the requirements of State Law and the Texas Property Code. The Fifth Circuit dealt with the question of whether inquiry notice was applicable to the bankruptcy trustee as the hypothetical purchaser under § 544(a). The Court observed that to find such notice inapplicable to a bankruptcy trustee would place the trustee in a better position than other purchasers under state law. This Court certainly agrees with that principal but it does not support the position of Sanger Bank. The Trustee is correct that pursuant to the Fifth Circuit's reasoning in *Hamilton* Texas law would not have required him to make an inquiry in light of the conclusiveness afforded the recorded documents under the statutory scheme. It is just that no bonafide purchaser would have had a duty to make any further inquiry when confronted with the recorded document at issue in this case and the absence of any other recorded documents indicating that one could not rely on the maturity date and the Texas statute of limitations.

■ As an additional basis to seek a summary judgment ruling, the Trustee relied upon a bankruptcy trustee's avoiding powers provided under 11 U.S.C. § 544(a)(1) which grants the trustee the status of a hypothetical creditor holding a judicial lien against the property. Sanger Bank's *Response To The Motion For Summary Judgment* fails to address or respond to the Section 544(a)(1)issue raised by the Trustee. Local Rule of Bankruptcy Procedure 7056 "Summary Judgments" states that Local District Rule CV–56 applies in adversary proceedings (as set forth herein above), and in particular, in an in-

Note, nor did it foreclose its lien on the Prop-

stance where facts remain un-controverted, the Court may deem them admitted.

Even were Sanger Bank to prevail in its arguments regarding inquiry notice and defeat the Trustee's status as a bona fide purchaser, Sanger Bank's argument and supporting evidence wholly fail to demonstrate to the Court that there is a genuine issue of material fact that might legitimately effect the outcome of this litigation respecting whether the Trustee, holding the power of a judicial lien creditor extending credit to the Debtor as of the commencement of the case, may avoid liens against real property of the Debtors, including an expired lien or an unrecorded and, therefore, improperly perfected extension of a lien. *11 U.S.C. § 544(a)(1).* The Court will not scour the record in an attempt to determine whether the record contains an un-designated genuine issue of material fact for trial before entering summary judgment given that the Response overlooks or ignores the issue.

### CONCLUSION

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for Summary Judgment. *Celotex*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); that burden has been met. There are no genuine issues of material facts in dispute among the parties sufficient to deny the Motion for Summary Judgment on the issue of the Trustee's power to avoid the lien of Sanger Bank against the subject Property. The Court finds the Note matured on December. 21, 1995. The Court further finds that Sanger Bank's lien under the original loan documents terminated December 21, 1999—the maturity date reflected in the Deed Records of the County-as a result of Sanger Bank's failure to properly record and ac-

erty."

knowledge its purported extension of its lien. Insofar as Sanger Bank failed to take any action on its lien debt secured by the Property within the appropriate statutory period, the Trustee is entitled to Declaratory Judgment that the lien asserted by Sanger Bank through its Deed of Trust on the Property is void and of no force and effect against the Trustee as of the date of the commencement of the case.

The issue of the value of the claim of Sanger Bank as an unsecured claim has not been addressed whatsoever. Moreover, the matter will still require trial on the Pilot Point issues, although settlement negotiations between the Trustee and Pilot Point are pending and the matter may be resolved thereby.

An order will be entered accordingly.